458 A.2d 177

**COMMONWEALTH of Pennsylvania**

v.

**Manfred HUDE, Appellant.**

Supreme Court of Pennsylvania.

March 11, 1983.

Thomas F. Traud, Jr., Sp. Asst. Public Defender, Allentown, for appellant.

Jerry A. Snyder, Asst. Dist. Atty., Allentown, for appellee.

Before ROBERTS, C.J., NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

484

## OPINION

NIX, Justice.

This is an appeal by allowance from the order of the Superior Court [1] affirming the order of the Court of Common Pleas of Lehigh County which dismissed appellant's motion to quash an indictment on the grounds that the scheduled trial would violate the protections afforded by the double jeopardy clauses of both the federal [2] and state constitutions [3] under the theory of collateral estoppel, and section 110 of the Crimes Code, 18 Pa.C.S.A. § 110. The complexity of the instant appeal requires a full recitation of both the facts and procedural history.

Appellant, Manfred Hude, was arrested in March, 1975 and charged with twenty (20) counts of possession and delivery of marijuana and one count of corruption of a minor. The charges arose out of a series of sales to the same individual which were alleged to have occurred on twenty (20) separate days between October, 1974 and January, 1975. Three of the possession and delivery charges were dismissed following the preliminary hearing. Prior to trial, in a proceeding in the nature of habeas corpus contesting the committing magistrate's *prima facie* determination, six (6) other counts were dismissed by stipulation of counsel.

In June, 1975 the Commonwealth brought Hude to trial on three (3) of the remaining eleven (11) possession and delivery charges and on the corruption charge. Hude was acquitted of these charges. The Commonwealth's evidence, rejected by the jury, consisted solely of the testimony of one Barry Hagemus, a self-confessed drug seller, who asserted that on at least three occasions between the end of October,

1. *Commonwealth v. Hude,* 286 Pa.Superior Ct. 619, 427 A.2d 243 (1980).

2. U.S. Const., amend. V, applied to the states through the Fourteenth Amendment. *See Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

3. Pa. Const., art. I, § 10.

1974 and the middle of January, 1975, Hude had sold him varying amounts of marijuana.

Specifically, Hagemus testified at the first trial that at the end of October, 1974, while seeking a new source of supply of marijuana to sell to students at Allen High School in Allentown, Pennsylvania, he was introduced to Hude. Hagemus sought to purchase six (6) pounds of marijuana and testified that the price allegedly quoted by Hude was $135.00 per pound. A meeting to consummate the transaction was set for the next night at 7:00 p.m. at an establishment called Dempsey's Restaurant. Hagemus testified that he met Hude the next night at Dempsey's Restaurant and drove with Hude in a small white, 2-door car to another location in Allentown.

Once at this second location, Hude allegedly left the car, went around the corner into an unknown house and returned approximately one hour later with six pounds of marijuana. Hagemus had already paid Hude for this marijuana from money he had received from prospective buyers. Hude then drove Hagemus back to Dempsey's. Prior to leaving, Hagemus requested another meeting in four days to purchase an additional four to six pounds of marijuana. The second meeting occurred approximately four days later, on November 2, 1974, as prearranged, at 7:00 p.m. again at Dempsey's. Hagemus gave Hude the money ($135.00 per pound) and Hude left on his own and returned to Dempsey's approximately one hour later with the marijuana. Hagemus then requested an additional six pounds of marijuana at the same price, at the same location and at the same time to be delivered on November 7, 1974. This third transaction was also consummated as prearranged. The defense consisted of a complete denial of the existence of any association between Hude and Hagemus.

Subsequent to the acquittal of the above charges, the Commonwealth brought Hude to trial on the remaining eight (8) possession and delivery charges. The primary testimony presented at this second trial was again that of Hagemus. Hagemus' testimony covered the alleged transac-

tions consummated between the end of November, 1974 and the middle of January, 1975. The dates of the transactions were different and the quantities purchased varied slightly. The remainder of Hagemus' testimony reflected that these transactions were made at Dempsey's Diner, at 7:00 p.m. at intervals prearranged by Hagemus and the marijuana was priced at $135.00 per pound. Thus, the testimony of Hagemus in both the first trial and the instant trial reflected an identical pattern of behavior. Moreover, no additional corroborative testimony was presented in the second trial which would have provided a logical basis for concluding a dissimilarity of the issues before the fact finders in the two proceedings. Hude was convicted of seven (7) of the eight (8) counts of possession and delivery.

Between the first and second drug trials, the Commonwealth charged Hude with perjury based on certain statements he made at the first trial wherein Hude denied being a drug seller. At the perjury trial, subsequent to the second drug trial, the Commonwealth again called Barry Hagemus who testified to the alleged purchases of marijuana from Hude. The trial judge, sitting without a jury, found Hude guilty of perjury.

In all three trials the Commonwealth relied upon the credibility of Hagemus to support the charges. In each instance, Hude insisted that he had no involvement with Hagemus. Thus, as in the case of both drug trials, the issue in dispute in the perjury trial was also only the credibility of Hagemus.[4]

On appeal from the convictions procured at the second drug trial, the Superior Court reversed[5] and granted Hude a

4. In the second trial, the only witness offered by the Commonwealth to establish the charges was again Hagemus. The Commonwealth additionally, in the second trial, attempted to bring in testimony to bolster Hagemus' credibility and to challenge the credibility of Hude. However, what is critical is that the only evidence in both trials of the alleged occurrences was supplied by Hagemus.

5. *Commonwealth v. Hude,* 256 Pa.Superior Ct. 439, 390 A.2d 183 (1978).

new trial.[6]  Following the remand by the Superior Court from the reversal of the convictions of the second drug trial, Hude filed a motion to dismiss the charges on the basis of, *inter alia,* double jeopardy under a theory of collateral estoppel and section 110 of the Crimes Code.[7]  The trial court denied the motion and the Superior Court affirmed *per curiam. See Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977).  We granted allowance of appeal and now reverse for the following reasons.[8]

The briefs and oral argument in this appeal reflect an opaqueness on the part of the parties as to the nature of the relationship between the *Campana* rule, section 110 and double jeopardy.  Clarity in defining the issue raised in this appeal requires that we first place these complaints in proper perspective.  This Court's decisions in *Campana I*[9]

**6.**  The basis for the Superior Court's award of a new trial was the introduction of evidence of unrelated crimes at the second drug trial. Hude had also alleged violations of the double jeopardy clauses of the federal and state constitutions as well as a section 110 violation. In view of the Superior Court's decision, it did not address these latter issues.  *See Commonwealth v. Hude, supra.*

**7.**  The record reflects that prior to the second drug trial Hude filed a motion to quash the indictments, alleging violations of both the federal and state constitutions under a theory of collateral estoppel as well as this Court's compulsory joinder rule.  The trial court denied the motion to quash on June 18, 1975, prior to this Court's decision in *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977).  Thus, any argument of waiver for failure to immediately appeal from that pre-trial ruling is without foundation since there was no authorization at that time for such an appeal.

**8.**  Hude also appealed the perjury conviction to the Superior Court contending that the perjury prosecution violated the double jeopardy clause under a theory of collateral estoppel.  The Superior Court affirmed.  *Commonwealth v. Hude,* 267 Pa.Superior Ct. 133, 406 A.2d 554 (1979).  We granted Hude's petition for allowance of appeal and reversed.  *Commonwealth v. Hude,* (Hude I), 492 Pa. 600, 425 A.2d 313 (1980).  In *Hude I* this Court reversed the perjury conviction on the basis that principles of collateral estoppel precluded relitigating the issue of Hagemus' credibility after an acquittal in the first trial.

**9.**  *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, *vacated and remanded,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973) (Campana I)

and *Campana II* [10] ultimately designed a rule of compulsory joinder which required the criminal offenses arising from the same criminal episode to be disposed of in one prosecution. *Commonwealth v. Beatty,* 500 Pa. 204, 455 A.2d 1194 (1983). In the interim between *Campana I* and *Campana II,* the legislature promulgated section 110 which set forth when prosecution would be barred by former prosecution for a different offense. [11]

While this Court in its *Campana* decisions spoke in terms of the obligation to join offenses, and the legislature in section 110 provided a bar of prosecution where joinder had not occurred, it is evident that our Court rule was in harmony with section 110. *See Commonwealth v. Beatty, supra; Commonwealth v. Stewart,* 493 Pa. 24, 425 A.2d 346 (1981); *Commonwealth v. Tarver,* 467 Pa. 401, 357 A.2d 539 (1976). Any treatment of an alleged *Campana* rule violation as a separate and distinct claim from an asserted section 110 violation is misleading. In *Campana* the Court affirmatively articulated the obligation to join the charges; in contrast, the General Assembly in section 110 achieved the same result by providing a sanction where such a joinder does not occur. [12] Any attempt to persuade this Court to modify or restrict its view expressed in its *Campana* rule would be unavailing since those provisions are also required by statutory mandate.

Another significant facet to this discussion is the relationship of the double jeopardy protections provided by our federal and state constitutions in this area. It cannot be

**10.** *Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854, *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974) (Campana II).

**11.** *Section 109 of the Crimes Code,* 18 Pa.C.S.A. § 109, addressed prosecutions barred by former prosecution for the same offense. Section 111, 18 Pa.C.S.A. § 111, set forth when prosecution would be barred by former prosecution in a foreign jurisdiction. Section 112, 18 Pa.C.S.A. § 112 provided a qualification to §§ 109, 110 and 111.

**12.** As previously noted, section 110 in its entirety and the related sections of the Crimes Code are broader than our *Campana* rule. *See* n. 11.

disputed that the underlying objective for both the Court and the General Assembly in this area was the same.

■ The compulsory joinder rule set forth in *Campana I and II* and the provisions of section 110 were designed to serve two distinct policy considerations: (1) to protect a person accused of crimes from governmental harassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation. *See Commonwealth v. Stewart, supra* 493 Pa. at 29, 425 A.2d at 348; *Commonwealth v. Holmes,* 480 Pa. 536, 541, 391 A.2d 1015, 1017 (1978); *Commonwealth v. Tarver, supra* 467 Pa. at 408, 357 A.2d at 542. "By requiring compulsory joinder of all charges arising from . . . [the same criminal episode], a defendant need only once 'run the gauntlet' and confront the awesome resources of the state." *Commonwealth v. Campana, (Campana I),* 452 Pa. at 251, 304 A.2d at 440–441.

It is therefore appropriate to begin our instant inquiry by determining the applicability of section 110 to the present facts. In so proceeding, we are mindful that if the provisions of section 110 are satisfied, there will have also been compliance with the requirement as set forth under the *Campana* rule. The necessity to consider the double jeopardy complaints will only arise if it is determined that the statutory provision does not require the grant of the relief requested. Here we find that section 110 does in fact require a ruling that the second prosecution on the drug charges should have been barred and, therefore, we will not in this opinion discuss the constitutional claims. *See, e.g., Beckert v. Warren,* 497 Pa. 137, 439 A.2d 638 (1981); *In re "B",* 482 Pa. 471, 394 A.2d 419 (1978); *Lattanzio v. Unemployment Compensation Bd. of Review,* 461 Pa. 392, 336 A.2d 595 (1975); *Binder v. Triangle Publications Inc.,* 442 Pa. 319,

275 A.2d 53 (1971); *Altieri v. Allentown Officers & Employees Retirement Bd.,* 368 Pa. 176, 81 A.2d 884 (1951).[13]

Section 110 provides in pertinent part:

Although a prosecution is for a violation of a different provision of the statute than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in Section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is for:

\* \* \* \* \* \*

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense. . . .

The principle question raised herein is whether these alleged transactions can properly be characterized as a "single criminal episode." The determination of which sets of circumstances wherein multiple crimes may have been committed give rise to a "single criminal episode" has engendered much discussion. The opinion of Mr. (now Chief) Justice Roberts in *Campana I* recognized that the "same transaction" or "same criminal episode" test is not self defining, 452 Pa. at 251, 304 A.2d at 440, and that analogies to the use of the term in civil litigation are instructive,

---

**13.** Jurisdiction for a *Bolden* appeal is based upon the complaint being a denial of double jeopardy protection. *Commonwealth v. Bolden, supra.* Although we are not here addressing the constitutional arguments as such, nevertheless it is appropriate to entertain the section 110 complaint because it is a plea in bar with double jeopardy overtones. *See, Commonwealth v. Muffley,* 493 Pa. 32, 425 A.2d 350 (1981). It does not constitute the "piggybacking" of non-double jeopardy issues that we have had occasion to reject. *See, e.g., Commonwealth v. Ward,* 493 Pa. 115, 132–133, 425 A.2d 401, 410–411 (1981) (Nix, J. concurring, joined by O'Brien, C.J.; Larsen, J. concurring; Flaherty, J. concurring) (due process claim not cognizable on *Bolden* appeal).

although they reflect different policy considerations than are present in the criminal context. *Id.* 452 Pa. at 251 n. 38, 304 A.2d at 440 n. 38.

■ Most post-*Campana* cases considered by this Court presented little difficulty in determining when multiple charges arose from the "same criminal episode." *See, e.g., Commonwealth v. Stewart, supra,* (possession of heroin and a gun at precisely the same time); *Commonwealth v. Muffley,* 493 Pa. 32, 425 A.2d 350 (1981) (possession of marijuana and LSD at same time). Generally, charges against a defendant are clearly related in time and require little analysis to determine that a single criminal episode exists. However, in defining what acts constitute a single criminal episode, not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered.

One commentator, in drawing an analogy from the civil law's "same transaction" test for compulsory counterclaims has stated:

[I]n ascertaining whether a number of statutory offenses are "logically related" to one another, the court should initially inquire as to whether there is a substantial duplication of factual, and/or legal issues presented by the offenses. If there is duplication, then the offenses are logically related and must be prosecuted at one trial. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require "an absolute identity of factual backgrounds."

      \*     \*     \*     \*     \*     \*

The temporal relationship between criminal acts will be a factor which frequently determines whether the acts are "logically related." However, the definition of a "single criminal episode" should not be limited to acts which are immediately connected in time. As the United States Supreme Court recognized in *Moore v. New York Cotton Exchange* [270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed.

750 (1926) ] " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." It is submitted that by requiring that criminal acts be logically related instead of temporally related, the courts will be better able to implement the policies which the "single criminal episode" test is designed to promote.

Comment, *Commonwealth v. Campana and Section 110 of the Crimes Code: Fraternal Twins,* 35 U. of Pitts.L.Rev. 275, 286–87 (1973).

Moreover, interpretation of the term "same criminal episode" must be consistent with the purposes sought to be achieved by section 110 as well as our promulgation of the compulsory joinder rule. *Commonwealth v. Beatty, supra.*

The protection against harassment through successive prosecutions has been recognized by the United States Supreme Court. "[T]he state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. . . " *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). As noted in *Hude I:* "No scenario would be more likely to suggest the specter of overzealous prosecution than the circumstances surrounding Mr. Hude's [perjury] conviction." *Commonwealth v. Hude, supra,* 492 Pa. at 615, 425 A.2d at 321.

■ The prosecution in the instant case was not only aware of all the alleged drug transactions, but had charged Hude with 20 separate counts of possession and delivery prior to the acquittal of three of the drug charges prosecuted at the first trial. This is not a situation where further investigation was required before additional charges could be brought against Hude. Dissatisfied with the acquittal in the first trial, the Commonwealth then proceeded not only to charge Hude with perjury based on his testimony at the first trial, but also to try Hude on the remaining drug charges

based on essentially the same evidence. Moreover, "[i]t is reasonable to assume that the Commonwealth selected the strongest cases in its first attempt to convict." *Hude I,* 492 Pa. at 620, 425 A.2d at 323. The Supreme Court has condemned such "dry runs" in order to obtain a conviction. *Ashe v. Swenson,* 397 U.S. 436, 447, 90 S.Ct. 1189, 1196, 25 L.Ed.2d 469 (1970).

The second purpose of the compulsory joinder rule and section 110 would also be frustrated if such prosecutorial tactics are condoned by this Court.

> "Compulsory joinder of all offenses arising from a single 'transaction' avoids piecemeal litigation and thus conserves precious judicial and professional manpower as well as the time of jurors, witnesses, and the use of public resources." *Commonwealth v. Campana [I],* 452 Pa. at 252, 304 A.2d at 441. And as Mr. Justice Brennan observed, joined by Justices Douglas and Marshall, "[C]onsolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience." *Ashe v. Swenson,* 397 U.S. 436, 454, 90 S.Ct. 1189, 1199, 25 L.Ed.2d 469 (1970) (concurring opinion) (footnote omitted).
>
> *Commonwealth v. Stewart, supra* 493 Pa. at 29, 425 A.2d at 349.

The Commonwealth has argued that each alleged sale constituted a separate and distinct criminal episode because they were alleged to have occurred on different dates and involved varying amounts of marijuana. However, to accept the Commonwealth's assertion that these facts constituted completely independent episodes would force the conclusion that subjecting Mr. Hude to eleven separate trials (one for each remaining transaction) would be permissible. Section 110 and the compulsory joinder rule were specifically designed to avoid such a result.

The difficulty presented in the instant case is highlighted by the absence of any reason for the Commonwealth's failure to consolidate all charges against Mr. Hude in the first drug trial. The record clearly reflects the Common-

wealth's persistence in seeking to convict Mr. Hude. This is not a situation where different evidence was required to be introduced to establish the alleged individual instances of possession and delivery. To the contrary, in both the first and second drug trials the Commonwealth's case rested solely upon the credibility of Hagemus. Severance of the charges in the case was not dictated by the need to prevent confusion of the issues to be decided. *Cf.* Pa.R.Crim.Pro. 219(a)(1).

■ To interpret the "single criminal episode" test in such a manner as to permit successive trials for each of the alleged transactions would clearly be offensive to the prohibition against successive prosecutions as well as an unjustifiable expenditure of judicial resources. The interpretation of the term "single criminal episode" must not be approached from a hypertechnical and rigid perspective which defeats the purposes for which it was created. *Cf. Commonwealth v. Jenkins,* 500 Pa. 144, 454 A.2d 1004 (1982) (*Davenport* rule to be interpreted to ". . . accomplish the purposes sought to be achieved by the requirement of a prompt arraignment.") Thus, where a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication and waste of scarce judicial resources. In such cases, failure to consolidate will bar successive prosecutions.

Such a standard will not create an undue burden on the Commonwealth. Section 110(1)(ii) provides that the Commonwealth may request the court to grant separate trials. *See Commonwealth v. Stewart, supra* 493 Pa. at 30, 425 A.2d 349, *citing Commonwealth v. Campana [I], supra* 452 Pa. at 25 n. 37, 340 A.2d at 440 n. 37. This procedure will insure that the interests of law enforcement, the judiciary and the accused will be satisfied.

Thus, we conclude that the drug charges brought against Mr. Hude after his initial acquittal arose from the same criminal episode since they were so logically interrelated that they essentially involved the same issues of law and

fact. Accordingly, Section 110 was violated by the second drug trial and appellant is therefore entitled to relief.

The Order of the Superior Court affirming the Order of the Court of Common Pleas is reversed. The indictments are quashed and appellant discharged.

McDERMOTT, J., concurred in the result.