662 A.2d 1050

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Mary M. CAUFMAN, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1994.

Decided July 20, 1995.

William R. Cunningham, Dist. Atty., Patrick M. Carey, Asst. Dist. Atty., for appellant.

W. Charles Sacco, Erie, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and CASTILLE, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal by allowance from an order of the Superior Court which reversed an order of the Court of Common Pleas of Erie County denying a motion to dismiss, on double jeopardy grounds, a charge of homicide by vehicle. The pertinent facts are as follows.

On October 26, 1990, the appellee, Mary M. Caufman, struck a pedestrian with her automobile. As a result, on October 30, 1990, a citation was issued to her for the summary offense of failure to drive at a safe speed. The pedestrian died as a result of her injuries on November 2, 1990. On November 14, 1990, appellee pled guilty to the summary offense and paid the fine. The same day, a complaint was filed charging appellee with homicide by vehicle.

At issue is the Superior Court's reversal of the trial court's ruling that appellee's plea of guilt to the charge of driving at an unsafe speed did not bar prosecution of the homicide by vehicle charge. We reverse.

Initially it is noted that this case is governed by double jeopardy analysis rather than by the requirement in 18 Pa. C.S. § 110 that charges arising from the same criminal episode be joined for prosecution or the "compulsory joinder rule" set forth in *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432 (1973), vacated and remanded, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), on remand, 455 Pa. 622, 314 A.2d 854 (1974), cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974). The statutory joinder requirement and *Campana* are inapplicable where, as here, the offense first prosecuted was a summary one. *Commonwealth v. Beatty,* 500 Pa. 284, 455 A.2d 1194 (1983). Accord *Commonwealth v. Taylor,* 513 Pa. 547, 522 A.2d 37 (1987).

Presently, both the trial court and the Superior Court applied the double jeopardy rule announced by the Supreme Court of the United States in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which required that charges resting on proof of the same criminal conduct be joined for prosecution except where facts necessary to joinder were not discovered despite the exercise of "due diligence" by prosecuting authorities. 495 U.S. at 510, 516 n. 7, 110 S.Ct. at 2087, 2090 n. 7, 109 L.Ed.2d at 557, 561 n. 7.

The trial court held that failure to consolidate the homicide by vehicle charge and the charge of driving at an unsafe speed was excused because the prosecution demonstrated due dili-

gence in filing all applicable charges as soon as facts necessary to support the charges became known. Because the charge of homicide by vehicle was filed within just twelve days of the victim's death and without knowledge of the entry of appellee's plea to the summary charge, the court concluded that the prosecution acted with diligence.[1] The Superior Court reversed, reasoning that the district attorney's office was in possession of all necessary facts when appellee entered her plea on November 14, 1990, and that the due diligence exception was not applicable because there was sufficient time to have filed the homicide by vehicle charge before that date.[2]

We granted allowance of appeal to consider whether the due diligence exception of *Grady* was applied properly below. The *Grady* decision has, however, recently been expressly overruled by the Supreme Court of the United States in *United States v. Dixon*, 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The holding of *Dixon* makes it unnecessary to reach the issue of due diligence in this case. *Dixon* cast aside the *Grady* analysis of whether multiple criminal charges rest on proof of the same underlying conduct, and reinstated the double jeopardy test that was followed prior to *Grady*. The Supreme Court stated:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. See ... *Blockburger v. United States*, 284 U.S. 299, 304, 76 L.Ed. 306, 52 S.Ct. 180 [182] (1932).... The same-elements test, sometimes referred to as the *"Block-*

1. The police investigator assigned to the case went on vacation before the victim's death and did not return to work until just before November 14, 1990, thereby causing the delay in filing the homicide by vehicle charge.

2. The Superior Court noted, however, as did the trial court, that the manner in which summary traffic charges are handled in this Commonwealth makes it very difficult to ensure that a person does not plead guilty to a summary offense prior to being charged with a more serious offense. Once charged with a summary offense, one can plead guilty and pay the fine at any time within ten days after receipt of a summons and without a personal appearance in court. Pa.R.Crim.P. 62, 64.

*burger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution....

We recently held in *Grady* that in addition to passing the *Blockburger* test, a subsequent prosecution must satisfy a "same-conduct" test to avoid the double jeopardy bar. The *Grady* test provides that, "if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted," a second prosecution may not be had. 495 U.S., at 510, 109 L.Ed.2d 548, 110 S.Ct. 2084 [at 2087].

. . . .

We have concluded, however, that *Grady* must be overruled. Unlike *Blockburger* analysis, whose definition of what prevents two crimes from being the "same offense," U.S. Const., Amdt. 5, has deep historical roots and has been accepted in numerous precedents of this Court, *Grady* lacks constitutional roots. The "same-conduct" rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy.

*Dixon,* 509 U.S. at ———––——, 113 S.Ct. at 2856–2860, 125 L.Ed.2d at 568–573.

■ The test approved by *Dixon,* to wit, the "same-elements" test of *Blockburger,* has long been followed in this Commonwealth. *Commonwealth v. Allen,* 506 Pa. 500, 510–14, 486 A.2d 363, 368–70 (1984), cert. denied, 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985). It requires a comparison of the elements of the offenses to determine whether " 'each [offense] requires proof of a fact which the other does not.' " *Id.* at 510, 486 A.2d at 368 (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309). Applying this test to the present case, it is clear that homicide by vehicle and driving at an unsafe speed are not the "same offense," U.S. Const. amend. V. Prosecution of the homicide by vehicle

charge is not, therefore, barred by the previous conviction for driving at an unsafe speed.

Plainly, the elements of the two offenses are not the same. Each offense requires an element not required by the other.

Homicide by vehicle requires that there have been a death caused by a criminally negligent or reckless violation of law. 75 Pa.C.S. § 3732 (homicide by vehicle); *Commonwealth v. Heck*, 517 Pa. 192, 535 A.2d 575 (1987). Driving at an unsafe speed obviously does not require that there have been a death; nor does it require criminally negligent or reckless behavior. 75 Pa.C.S. § 3361 (driving at safe speed). Likewise, the latter offense necessarily involves driving at excessive speed. Homicide by vehicle does not. See *Matter of Huff*, 399 Pa.Super. 574, 581–82, 582 A.2d 1093, 1096–97 (1990), aff'd, 529 Pa. 442, 604 A.2d 1026 (1992). Although proof of the homicide by vehicle charge will involve proof of the manner in which appellee was driving, "mere overlap in proof between two prosecutions does not establish a double jeopardy violation." [3] *United States v. Felix*, 503 U.S. 378, 379, 112 S.Ct. 1377, 1379, 118 L.Ed.2d 25, 34 (1992).

Hence, double jeopardy does not bar appellee's prosecution for homicide by vehicle. The order of the Superior Court to the contrary must, therefore, be reversed.

Order reversed.

PAPADAKOS, J., did not participate in the decision of this case.

MONTEMURO, J., did not participate in the consideration or decision of this case.

CAPPY, J., files a dissenting opinion.

**3.** The complaint charging homicide by vehicle alleges that, in addition to driving at an unsafe speed, appellee consumed alcohol and wove in and out of traffic and passed vehicles during nighttime hours in the midst of dense pedestrian and vehicular traffic.

CAPPY, Justice, dissenting.

Because I cannot agree with the Majority's conclusion that appellee's prosecution for homicide by vehicle is permitted under principles of double jeopardy, I must dissent. In addition, I write separately to express my strong disagreement with the Majority's reasoning and analysis regarding the interplay between 18 Pa.C.S. § 110, the compulsory joinder rule, federal double jeopardy and state double jeopardy principles.

This case is unique in that both the trial court and the Superior Court relied exclusively upon a decision of the United States Supreme Court, to wit, *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which although good law at the time both of those courts decided the case *sub judice*, has now been overruled. In *Grady*, the United States Supreme Court held that in addition to passing the *Blockburger* test [1] of Double Jeopardy, discussed *infra*, a subsequent prosecution must also satisfy the "same conduct" test. In essence, the "same conduct" test provides that a second or subsequent prosecution will be barred if, in order to establish an essential element of that second prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been convicted. As the Majority so notes, the United States Supreme Court, in its recent decision in *United States v. Alvin J. Dixon and Michael Foster*, 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), overruled *Grady* and reaffirmed the *Blockburger* test as the guiding principle for purposes of Fifth Amendment Double Jeopardy protections.

The Commonwealth on appeal to this Court argues that the Superior Court's decision, because predicated upon *Grady*, must be reversed and the charge of homicide by vehicle reinstated under the *Blockburger* test. The Commonwealth further argues that the Superior Court erred in determining that the "due diligence" exception to the principles of double jeopardy was not here met. Appellee originally argued in her

1. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

pre-trial motion that her subsequent prosecution for homicide by vehicle was barred under the Fifth Amendment to the United States Constitution, 18 Pa.C.S. § 110, and Article I, Section 10 of the Pennsylvania Constitution.[2] The Majority here agrees with the Commonwealth that the *Blockburger* test does not preclude the subsequent prosecution for homicide by vehicle. The Majority further concludes that the holding in *Dixon* renders it unnecessary to reach the issue of "due diligence" and that under *Commonwealth v. Beatty*, 500 Pa. 284, 455 A.2d 1194 (1983), compulsory joinder is not required since the first prosecution was for a summary offense. As for the issue of whether the Pennsylvania Constitution's double jeopardy provision, Article I, Section 10, would bar the prosecution for homicide by vehicle, the Majority appears to hold that the "same-elements" test of *Blockburger* is equally applicable under our state constitution. I respectfully disagree with all of the Majority's conclusions.

Initially, while I agree that the United States Supreme Court's holding in *Dixon* specifically overruled the decision in *Grady* and that the federal test for purposes of Double Jeopardy is the *Blockburger* test, I disagree with the Majority's application of that test to the facts presented in the instant appeal. The *Blockburger* test focuses on whether each offense contains an element not contained in the other; if *each* offense does not contain an element distinct from the other offense, the offenses are deemed to be the "same offense" for purposes of the Fifth Amendment Double Jeopardy protection and therefore, the subsequent prosecution is barred. At issue in *Blockburger* was whether two offenses were sufficiently distinguishable to permit the imposition of multiple punishments. As enunciated therein:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether *each* provision requires

2. Given the Superior Court's conclusion that the subsequent prosecution was barred under the federal Constitution, that Court did not address either 18 Pa.C.S. § 110 or Article I, Section 10 of the Pennsylvania Constitution.

proof of a fact which the other does not ... (emphasis
added)

*Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.[3]   Thus, the
*Blockburger* test is satisfied if each statutory offense requires
proof of a fact that the other does not.  As long as *one* offense
can be "stacked up" against the other and no additional
elements are found, that offense is deemed to be a lesser-
included offense and hence, "the same offense" for purposes of
the Double Jeopardy Clause of the Fifth Amendment.

While correctly setting forth the *Blockburger* test, the Ma-
jority applies that test in a manner which I believe to be
unsupported in the case law.   The crux of the difference
between my reading of the cases and that advanced by the
Majority is that the Majority would look at the double jeopar-
dy issue in a sterile theoretical vacuum, and find that the two
offenses contain "distinct" elements as long as the cold lan-
guage of the statute says they do.   My reading of the cases,
however, is that the double jeopardy guarantee is meant to
deal with *actual* defendants and *actual* circumstances.   If it is
possible that two offenses could contain distinct elements on
paper, but in fact one is subsumed within the other because
(as here) the government has declared its intention to prose-
cute the cases in that fashion, Double Jeopardy is as real and
abhorrent as if the same statute had been twice invoked to
send the same defendant to jail for the same offense.

The Majority in this case leaps from the fact that the
homicide by vehicle statute subsumes many different traffic
violations and does not *necessarily* involve driving at an
unsafe speed, to the conclusion that the two offenses "contain
different elements" for purposes of the Double Jeopardy
clause of the Fifth Amendment.   Yet the government in this

**3.** Although the issue of whether multiple punishments violate double
jeopardy principles is somewhat distinct from the issue presented here,
the same test has been consistently applied to the issue of successive
prosecutions.   *See Dixon,* 509 U.S. at ——, 113 S.Ct. at 2855, 125
L.Ed.2d at 567.   Also, it has been held that for purposes of the Fifth
Amendment Double Jeopardy clause, lesser included and greater in-
cluded offenses are the "same offense."   *See Brown v. Ohio,* 432 U.S.
161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

case actively solicited and accepted appellee's plea of driving at an unsafe speed, and went on to declare that it would then prosecute appellee for homicide by vehicle, based upon precisely the *same* traffic violation—driving at an unsafe speed. In essence, what the Majority concludes is that where the subsequent offense (here homicide by vehicle) theoretically *could* be proven without resort to the prior offense (i.e. unsafe speed), the offenses are not the same under the *Blockburger* test; even though, in reality, the government has openly announced that it intends to prosecute the cases in an overlapping fashion, such that the homicide by vehicle trial will be—in fact—a trial about driving at an unsafe speed. In other words, the Majority holds that because homicide by vehicle does not *necessarily* require proof of unsafe speed, the two offenses are never the "same offense" under *Blockburger* and thus, a subsequent prosecution for one of these offenses following a conviction for the other does not violate double jeopardy. Indeed, the Majority goes so far as to conclude that even if the Commonwealth were to rely on proof of the unsafe speed conviction in the subsequent prosecution for homicide by vehicle, double jeopardy would not be violated. (opinion p. 1052). As I view it, the Majority opinion could be read to stand for the proposition that even if the unsafe speed conviction ultimately constitutes the sum and substance of the Commonwealth's proof in the instant homicide by vehicle prosecution, there will be no double jeopardy bar as long as the Commonwealth submits a scintilla of proof beyond that which comprises the unsafe speed conviction. My review of the relevant case law reveals that the Majority's position is incorrect. Indeed, the United States Supreme Court's most recent decision in *Dixon,* the case relied upon by the Majority, itself supports a contrary position.[4]

---

4. I acknowledge that my research has revealed that while the precise test to be applied for purposes of federal double jeopardy is generally agreed upon by the courts, much contrariety of opinion exists as to the method of application of that test. Indeed, there are five separate opinions in *Dixon* each of which expresses varying theories on this issue. However, five of the Justices in *Dixon* did agree with the precise holding on which I have relied in this dissent. Specifically, Scalia, J. was joined by Kennedy, White, Stevens, and Souter, JJ. with respect to

In *Dixon,* the United States Supreme Court specifically noted that where a particular statute incorporates several enumerated offenses, those underlying offenses constitute lesser included offenses where the facts are such that the "lesser offense" clearly constitutes the substance of the government's prosecution of the "greater offense." *Dixon* 509 U.S. at ——, 113 S.Ct. at 2857, 125 L.Ed.2d at 569–70. More specifically, where a particular offense incorporates several enumerated offenses, any one of which may form the basis for a prosecution of that particular offense, the precise underlying substantive offense is a lesser included offense for purposes of Double Jeopardy. As such, a prosecution for the "greater offense" which was predicated upon a violation of the particular underlying offense, would be barred. In so holding, the United States Supreme Court relied upon its earlier decision in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). I find the decision in *Vitale* to be particularly instructive to the facts presented in the case *sub judice.*

In *Vitale,* the defendant was convicted for failing to reduce speed to avoid an accident. He was subsequently charged with involuntary manslaughter. The United States Supreme Court there held that irrespective of the fact that manslaughter by automobile under Illinois law did not always entail proof of a failure to reduce speed, Double Jeopardy would bar the prosecution for manslaughter if the prosecution either indicated prior to trial that it would rely upon the failure to reduce speed to prove manslaughter, or if during trial, the prosecution actually did rely upon same. The Court ultimately remanded the matter to the Illinois state court for further proceedings. Notably, one of the stated reasons for the remand was the fact that the prosecution had yet to reveal the basis for its manslaughter charge.[5]

his conclusion that the contempt violations as to both Dixon and Foster barred further prosecution for those offenses which formed the basis of the findings of contempt.

5. In holding that the State's actual intention in a particular case was relevant to a determination of whether Double Jeopardy was implicated, the Court in *Vitale* relied upon its earlier decisions in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). In

The United States Supreme Court's decisions in both *Dixon* and *Vitale* thus make clear that a determination of whether a defendant's double jeopardy rights have been violated necessarily depends upon the circumstances presented in each particular case. In so holding, the United States Supreme Court surely recognized that no other application would suffice because the prohibition against double jeopardy is for a particular defendant's protection. In other words, because the proscription against double jeopardy is peculiar to each defendant, any meaningful determination of whether that protection has been, or will be violated, in a particular case, especially where one of the offenses involved incorporates numerous underlying substantive offenses, demands that the precise circumstances of that case be considered. Any other application would render meaningless this valued constitutional right of a defendant.[6]

The statute at issue here is similar to those at issue in *Vitale* and *Dixon* in that the offense of homicide by vehicle incorporates the entire Vehicle Code, except driving under the influence of alcohol or a controlled substance.[7] The offense for which appellee has already pled guilty, driving vehicle at

*Harris*, the Court held that a conviction on a felony-murder charge barred a subsequent prosecution for robbery where that exact robbery had been used to establish the requisite intent on the murder charge irrespective of the fact that, theoretically, it was possible that a different felony could support a felony-murder charge.

6. The Majority's position to the contrary that unless the lesser offense is necessarily included within the statutory elements of the greater offense, the two offenses are separate and distinct for double jeopardy purposes is strikingly similar to Mr. Justice Rehnquist's position in his concurring and dissenting opinion in *Dixon*. Indeed, it appears to be identical thereto. Given the fact that Mr. Justice Rehnquist's position did not garner a majority vote in *Dixon* it would seem that the Majority's position in the instant matter is somewhat suspect.

7. Our homicide by vehicle statute, 75 Pa.C.S. § 3732 provides:

Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3731 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death.

safe speed, is a violation of the Motor Vehicle Code.[8] Thus, under the analysis of *Dixon*, unsafe speed is a lesser included offense of homicide by vehicle for purposes of Double Jeopardy if the Commonwealth relies, or indicates that it will rely, upon that violation to prove homicide by vehicle. In other words, if the unsafe speed conviction *in fact* constitutes a necessary component of the Commonwealth's subsequent prosecution for homicide by vehicle, double jeopardy would be violated. The Commonwealth unequivocally declared during the pre-trial hearing held in this matter on August 27, 1991, that one of the elements it intends to establish in the subsequent prosecution is the unsafe speed violation. (N.T. August 27, 1991, p. 9–10).[9] Accordingly, under the holdings in *Vitale* and *Dixon*, the prosecution for homicide by vehicle should be barred under the *Blockburger* test.[10]

A conclusion that the *Blockburger* test bars the prosecution for homicide by vehicle does not, however, end the inquiry. The United States Supreme Court has recognized an exception, commonly referred to as the "due diligence" exception, which may render the bar of Double Jeopardy not effective. In essence, the due diligence exception provides that while the

**8.** 75 Pa.C.S. § 3361 of the Vehicle Code provides:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

**9.** I do not reach a conclusion as to whether a wholly new prosecution of appellee for homicide by vehicle, premised upon underlying Vehicle Code violations unrelated to driving at unsafe speed, would continue to raise any Double Jeopardy problems under the Fifth Amendment.

**10.** While I acknowledge that the Superior Court in its opinion stated that Ms. Caufman had conceded that the homicide by vehicle charge was not barred under *Blockburger*, that concession no doubt was prompted by the then prevailing decision in *Grady*. In any event, the same has clearly not been conceded before this Court.

Fifth Amendment forbids successive prosecutions and cumulative punishment for greater and lesser included offenses, an exception exists where the government is unable to proceed on the greater offense until after the commencement of the prosecution for the first offense because the additional facts necessary to establish that greater offense had not yet occurred or could not have been discovered despite the exercise of due diligence on the part of the government. *Brown v. Ohio,* 432 U.S. at 169, n. 7, 97 S.Ct. at 2227, n. 7, 53 L.Ed.2d at 196, n. 7. This exception is particularly important under my "practical" (as opposed to the Majority's "theoretical") view of the Double Jeopardy protection, since the due diligence escape valve protects against abuses of that constitutional guarantee by preventing defendants from snapping up a guilty plea on a "lesser included offense," when unsuspecting officers may be unaware of more serious crimes that will ultimately subsume the lesser ones.[11]

Notwithstanding the Superior Court's reliance upon *Grady* and *Commonwealth v. Labelle,* 397 Pa.Super. 179, 579 A.2d 1315 (1990), *reversed on other grounds,* 531 Pa. 256, 612 A.2d 418 (1992), I agree with that court's conclusion that the due diligence exception is not applicable under the present facts. As the Superior Court (Montemuro, J., now Senior Justice Montemuro) noted:

> In the instant case, there was an accident in which an elderly woman was sent to the hospital in serious condition. On October 30, [1990,] four days after the accident, after consultation with the district attorney's office, appellant was cited for driving at an unsafe speed. On November 2, 1990,

11. For example, if the Commonwealth in the instant case had been unaware that the victim died at the time appellee's guilty plea was accepted, the due diligence exception might permit a second prosecution for homicide by vehicle even though the two charges overlap. The Double Jeopardy clause is not meant to permit defendants to "take advantage" of the system by pleading guilty to "lesser included offenses" to avoid more serious ones unknown to the Commonwealth. That, however, is not the situation here, since the Commonwealth permitted the citation for unsafe speed to stand, and therefore, be subject to final judicial determination, knowing that 1) the victim had died, and 2) a homicide by vehicle prosecution was imminent.

the victim died as a result of injuries suffered from being struck by appellee. On November 14, [1990] appellee paid the traffic citation, and on the same day was charged with homicide by vehicle.

It is true that the district attorney's office could not possibly have charged appellant with homicide by vehicle before November 2, 1990, when Ms. Smith died. Furthermore, if appellee pleaded guilty prior to the time the district attorney's office knew that a death was caused by the accident, then double jeopardy would not attach. *See Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912) (subsequent trial for murder was not barred by prior conviction for assault and battery when victim died after first conviction). However, the district attorney's office was in possession of all necessary facts when appellee plead guilty on November 14, 1990. Thus, the due diligence exception relied upon by the trial court does not apply to this case.

*Commonwealth v. Caufman*, 417 Pa.Super. 131, 138, 611 A.2d 1300, 1304 (1992).

The fact that the police officer specifically assigned to this case was on vacation when Ms. Smith died, does not and should not suffice to establish a "due diligence" exception. While perhaps explanatory, the absence of the investigator does not, and should not, excuse the delay. The fact remains that the District Attorney's Office possessed all the necessary information on or about November 2, 1990, and most definitely was in possession of all relevant facts on November 14, 1990, when appellee pled guilty to the summary offense. In short, the record here does not establish that the Commonwealth acted with due diligence during the twelve days between the death and the filing of the Complaint charging homicide by vehicle.

Accordingly, for all the foregoing reasons, I would find that the subsequent prosecution for homicide by vehicle should be barred under the Fifth Amendment Double Jeopardy Clause.

I also believe that the subsequent prosecution for homicide by vehicle is barred under Article I, Section 10 of the Pennsylvania Constitution. The Majority provides no analysis with respect to the claim of double jeopardy under our state constitution. If what the Majority intends to imply on page 1052 of its opinion wherein it states that "[t]he test approved by *Dixon*, to wit, the "same-elements" test of *Blockburger*, has long been followed in this Commonwealth," is that our state constitutional double jeopardy standards are equivalent to those of the federal, I respectfully disagree.

First, the decision cited by the majority, *Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984), *cert. denied*, 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985), does not even address Article I, Section 10 of the Pennsylvania Constitution. The decision in *Allen* rests solely upon a Fifth Amendment double jeopardy analysis. Thus, it cannot be used as support for the proposition that our state constitutional double jeopardy provision provides protection equivalent to that of the United States Constitution.

More importantly, however, the rationale of *Allen* has been explicitly refuted by the United States Supreme Court in *Dixon*. In *Allen*, the defendant had been ordered pursuant to the Protection From Abuse Act, 23 Pa.C.S. § 6101 *et seq.*, (hereinafter "PFA Order") to refrain from physically abusing his wife and/or their children. Charges of simple assault and trespass were subsequently filed against the defendant as a result of his forcible entry into his wife's home and his concomitant abuse of her. Several days later, the defendant was charged with, and found in contempt of, that PFA Order. The defendant was later charged with raping his wife during the course of his earlier assault and trespass. All three criminal charges were consolidated for trial. It was the defendant's contention, *inter alia*, that double jeopardy barred these criminal charges given his previous conviction of contempt. This Court held, in relevant part, that indirect criminal contempt and simple assault were separate offenses under *Blockburger* because (1) the two offenses did contain the "requisite 'separate elements'" since the "defendant could

have willfully violated the court order by any number of actions," and (2) the two offenses served distinct purposes in that the purpose of a contempt order is the protection of our judicial system from abuse, not punishment for a criminal act. *Allen*, 506 Pa. at 514, 486 A.2d at 370.[12]   This was precisely the rationale *rejected* in *Dixon and Foster* by a majority of the Court.   *See*, footnote 4, *supra*.   Both Dixon and Foster had been tried for criminal contempt of court for violation of court orders that prohibited them from engaging in conduct that was later the subject of a criminal prosecution.   The United States Supreme Court in *Foster* held that the substantive criminal offense which underlay the finding of contempt was a lesser-included offense and thus barred under the *Blockburger* test.   Significantly, the Court there found that the indictment against Foster charging assault was barred because it was based upon the same event that was the subject of his prior contempt conviction.   The contempt order violated by Foster was similar to the one at issue in *Allen* insofar as it enjoined Foster from molesting, assaulting or in any manner threatening or physically abusing his wife.

As for the second prong of this Court's holding in *Allen*, the United States Supreme Court in *Dixon* unequivocally stated that such a distinction "is of no moment for purposes of the Double Jeopardy Clause, the text of which looks to whether the *offenses* are the same, not the interests that the offenses violate."  *Dixon*, 509 U.S. at –– –– ––, 113 S.Ct. at 2857–2858, 125 L.Ed.2d at 570.   Clearly then the majority's reliance upon *Allen* is misguided.

In addition, my review of our case law convinces me that this Court has evinced a predilection for a broader protection against double jeopardy under our state constitution than that of the United States Constitution.   As this Court has repeatedly emphasized, in interpreting a provision of the Pennsylvania Constitution, we are not bound by the United States Supreme Court's interpretation of similar federal constitution-

12.   As for the charges of rape and criminal trespass, this Court held that the same were not barred by double jeopardy.   I believe that holding is consistent with the Supreme Court's decision in *Dixon*.

al provisions. *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991) and cases cited therein. As we stated in *Edmunds:*

> [T]he federal constitution establishes certain minimum levels which are "equally applicable to the analogous state constitutional provision. However, each state has the power to provide broader standards, and go beyond the minimum floor which is established by the federal Constitution.

*Id.* at 388, 586 A.2d at 894 (citations omitted). In analyzing a provision of our state constitution, we look to (1) the text of the Pennsylvania constitutional provision; (2) the history of that provision, including Pennsylvania case-law; (3) related case-law from other jurisdictions; and (4) policy considerations.

While the text of Article I, Section 10 of the Pennsylvania Constitution[13] differs only stylistically from its federal counterpart[14], we need not interpret the two provisions in a like manner. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Edmunds,* 526 Pa. at 391, 586 A.2d at 895–96. Indeed, the case law which has developed in this Commonwealth with respect to the issue of double jeopardy under our state constitution, while somewhat obscure, nevertheless adheres to our rule of compulsory joinder first espoused in *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432 (1973), *vacated and remanded,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand,* 455 Pa. 622, 314 A.2d 854 (1974), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974).[15]

**13.** Article I, Section 10 of the Pennsylvania Constitution provides that "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb; ..."

**14.** The Double Jeopardy Clause Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."

**15.** While I will acknowledge that this Court has stated previously that the double jeopardy clause of our state constitution was not intended to provide protection greater than that afforded under the Fifth Amendment to the United States Constitution, *Commonwealth v. Hogan,* 482 Pa. 333, 393 A.2d 1133 (1978), this Court has *also* clearly stated the opposite. For instance, Mr. Justice Flaherty writing for the majority in

In *Campana I,* the Court adopted the "same criminal episode" test as the standard to be applied in determining a claim of double jeopardy. In essence, such a test requires that all charges arising from the same criminal episode be brought in a single prosecution and that, if not, any subsequent prosecution arising from that criminal episode will be barred.[16] This rule of compulsory joinder was subsequently codified in section 110 of the Crimes Code. 18 Pa.C.S. § 110.[17]

> *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992), noted Article I, Section 10 of the Pennsylvania Constitution provides greater protection to a defendant than its federal counterpart. Significantly, neither of the above-cited cases, representing either view, discuss specifically the issue involved here.

16. Notwithstanding the *Campana I* Court's unequivocal reference to the Double Jeopardy clause of the Fifth Amendment in its decision, the Court, in *Campana II,* declared that its decision in *Campana I* was based upon state law and not federal.

17. Section 110 provides:

**When prosecution barred by former prosecution for different offense**

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

(i) any offense of which the defendant could have been convicted on the first prosecution;

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense; or

(iii) the same conduct, unless:

(A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(B) the second offense was not consummated when the former trial began.

(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense.

While this Court has, at times, viewed the *Campana* rule of compulsory joinder as something other than a principle of double jeopardy, *see Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177 (1983), it has also clearly viewed that rule as our state standard of double jeopardy. *See, e.g., Commonwealth v. Tarbert*, 517 Pa. 277, 283, 535 A.2d 1035, 1038 (1987); *Commonwealth v. Edmunds*, 526 Pa. at 388, 586 A.2d at 894. Notwithstanding this inconsistency, it is abundantly clear from our case law that the purposes underlying our rule of compulsory joinder rule are precisely those concerns which underlie the double jeopardy protection. For instance, in *Hude*, this Court stated:

> The compulsory joinder rule set forth in *Campana I and II* and the provisions of section 110 were designed to serve two distinct policy considerations: (1) to protect a person accused of crimes from governmental harassment of being forced to undergo successive prosecutions for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process with repetitious litigation. 'By requiring compulsory joinder of all charges arising from ... [the same criminal episode], a defendant need only once 'run the gauntlet' and confront the awesome resources of the state.'

*Hude*, 500 Pa. at 489, 458 A.2d at 180 (citations omitted). As such, it seems clear to me that we would interpret our state constitution, and more specifically, Article I, section 10 thereof, as providing similar protections as those afforded under our statutory rules.[18] At the very least, our prior case law

(3) The former prosecution was improperly terminated, as improper termination is defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for an offense of which the defendant could have been convicted had the former prosecution not been improperly terminated.

18. Other states have adopted similar tests with respect to the issue of successive prosecutions, some of which have adopted strictly a "same transaction" test and others which have adopted a combination of the "same transaction" test and the "same evidence" test. *People v. White*, 390 Mich. 245, 212 N.W.2d 222 (1973); *State v. Yock*, 49 Or.App. 749,

suggests that in Pennsylvania, a defendant's interest in being free from vexatious multiple prosecutions is of paramount concern and that the interpretation given the Double Jeopardy Clause of the Fifth Amendment by the United States Supreme Court in *Dixon* does not adequately protect that interest.

Given all the foregoing, it also appears clear that the jurisdictional exception to Section 110 as interpreted in *Commonwealth v. Beatty*, 500 Pa. 284, 455 A.2d 1194 (1983), cannot survive. In *Beatty*, this Court interpreted section 110(1)(ii), and more specifically the terms "and was within the jurisdiction of a single court" as excluding Motor Vehicle Code violations from the requirements of that section. Subsequently, in *Commonwealth v. Taylor*, 513 Pa. 547, 522 A.2d 37 (1987), this Court extended that holding to all summary offenses. According to the holding in *Beatty*, the compulsory joinder rule does not apply where a defendant has been convicted of a lesser offense in an inferior court which had no jurisdiction to dispose of the greater offense, and then is subsequently tried for the greater offense in the "superior" tribunal. This is true irrespective of the fact that the lesser offense could clearly have been consolidated with the greater offense and disposed of by the "superior" tribunal. While clearly addressing the language of Section 110, the *Beatty* Court nevertheless states that such an interpretation would not violate the principles sought to be protected by the compulsory joinder rule, section 110, or double jeopardy, again clearly recognizing the relatedness of those three principles. *Beatty*, 500 Pa. at 290–291, 455 A.2d at 1198. In essence, what that holding does then is provide *less* protection under state law to an accused than he or she is entitled to under the United States Constitution. Such clearly is not permitted. *See Commonwealth v. Edmunds, supra,* at 374, 586 A.2d 887.

Moreover, I do not believe that one's constitutional protection against being twice placed in jeopardy should be so fragile as to give way to jurisdictional limits created by our legislature. Our court system, although divided into several facets,

621 P.2d 592 (1980); *State v. Corning,* 289 Minn. 382, 184 N.W.2d 603 (1971); *Johnson v. State,* 611 P.2d 1137 (Okl.Cr.App.1980).

is one unified judicial system. A defendant derives his or her rights when thrust into that system from the Constitutions, both federal and state, and the various courts derive their authority from those same pillars. The constitutional protection against double jeopardy is for the defendant's protection. Clearly, a rule imposed by the legislature allocating jurisdiction to try criminal offenses between several courts of the same state, must be subordinated to one's constitutional right not to be twice tried for the same offense. If, indeed, the two offenses are the "same offense" under the prevailing test, whatever that may be, then our jurisdictional exception as set forth in *Beatty* must fail. Although this Court has indicated that the decision in *Beatty* can be employed without consideration of the constitutional protections of double jeopardy, *see, Commonwealth v. Hude, supra,* at 482, 458 A.2d 177, I disagree. As noted previously in this dissenting opinion, the Court in *Beatty* acknowledged that the principles underlying Section 110 were identical to those underlying the constitutional double jeopardy protections. As such, I simply cannot countenance blind adherence to the rule announced in *Beatty*.

To reiterate, I strongly believe that our jurisdictional exception of *Beatty* should not be employed to circumvent constitutional double jeopardy. In so concluding, I rely principally upon the United States Supreme Court decision in *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), *reh'g denied,* 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 79 (1970), which I find supports this position. In *Waller,* the Court held that a prosecution in municipal court on a lesser included offense barred a state prosecution on a greater offense which was based on the same acts as the municipal court conviction. The Court there rejected the government's argument that the two courts were separate sovereigns, finding instead that the two courts were each part of *one unified judicial system* and as such must adhere to the double jeopardy proscription.[19]

19. Other courts as well have rejected a similar "jurisdictional exception" reasoning too, that a defendant's rights are paramount to jurisdictional limitations imposed within a single judicial system. *See e.g., Salaz v. Tansy,* 730 F.Supp. 369 (D.N.M.1989); *Commonwealth v.*

Moreover, I believe that Section 110 of our Crimes Code, and more specifically the terms interpreted in *Beatty*, are capable of being interpreted in a manner consistent with double jeopardy concerns. Thus, in adhering to our rules of statutory construction that the legislature is presumed to attach importance to every word, *O'Reilly v. Fox Chapel School District*, 521 Pa. 471, 555 A.2d 1288 (1989), it appears to me that the terms "within the jurisdiction of a single court" could, and should, be interpreted as meaning that where the charges could have been tried in a single court, the charges must be brought in one proceeding assuming, of course, that all the charges arose from the same criminal episode and the prosecution was aware of all those charges prior to the time that the defendant's double jeopardy protections attached. I am fully cognizant that the majority in *Beatty* seemingly refuted this very thought in footnote 3 of its opinion; nevertheless, given my position as more fully set forth above, I must reach this contrary result.

I am especially troubled by the fact that in the instant matter, if we were to allow the subsequent prosecution, appellee's plea to the relatively minor summary offense of unsafe speed renders her unable to offer any defense to the elements on which the Commonwealth has unequivocally indicated it would rely. Precluding the government from "stacking the deck" is clearly one of the concerns underlying the double jeopardy provision. *See Green v. United States*, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199, 204 (1957). I think this fact, alone, renders the language in *Beatty* somewhat suspect. I believe actions such as those taken in the instant matter do, indeed, present a type of "government harassment" which offends double jeopardy. While I realize that such a result under the circumstances presented here appears harsh insofar as there has been no intimation that the Commonwealth purposefully waited until the plea was rendered to charge appellee with homicide by vehicle, that fact alone does not persuade me to so cavalierly dispense with

*Norman*, 27 Mass.App. 82, 534 N.E.2d 816 (1989), *affirmed*, 406 Mass. 1001, 545 N.E.2d 1155 (1989).

appellee's constitutional rights. Had the Commonwealth not possessed the evidence necessary to charge appellee with homicide by vehicle prior to the day that she pled to the summary offense, the result clearly would be different.

In conclusion then, I would find that the prosecution for homicide by vehicle is barred under the *Blockburger* test and that there is no evidence presented which would support a finding of due diligence on the part of the Commonwealth here. Further, I would find that the Pennsylvania Constitution provides greater protection against multiple prosecutions than does the United States Constitution. Finally, I would find that the jurisdictional exception of 18 Pa.C.S. § 110, as interpreted in *Beatty, supra,* at 284, 455 A.2d 1194, is not consistent with principles of double jeopardy under either the Fifth Amendment of the United States Constitution or Article I, Section 10 of the Pennsylvania Constitution.

For all the foregoing reasons, I respectfully dissent.