J-A30033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CONRTNEY CARTER, | : | |
| | : | |
| Appellant | : | |
| | : | No. 2760 EDA 2014 |

Appeal from the Order Dated August 14, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s): CP-51-CR-0003029-2013

BEFORE: MUNDY, JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED APRIL 18, 2016**

Appellant, Conrtney Carter,[1] takes an interlocutory appeal from the order of the Philadelphia Court of Common Pleas denying his motion to dismiss charges under 18 Pa.C.S. § 110.[2] Appellant claims that the pending

---

[*] Former Justice specially assigned to the Superior Court.

[1] The record contains discrepancies regarding the spelling of Appellant's name as various court documents use the spelling "Conrtney" or "Courtney." This memorandum uses "Conrtney," which conforms with the spelling used in the trial court's dockets.

[2] The trial court's order stated that Appellant's "motion was not frivolous." Order, 8/14/14; **see also** Pa.R.A.P. 313; Pa.R.Crim.P. 587(B)(6) ("If the judge denies the motion but does not find it frivolous, the judge shall advise the defendant on the record that the denial is immediately appealable as a collateral order"); **accord Commonwealth v. Barber**, 940 A.2d 369, 376 (Pa. Super. 2007).

prosecution for violations of the Pennsylvania Uniform Act[3] ("VUFA charges") is barred by his former conviction for possession and purchase of cocaine[4] ("narcotics charges"), because all charges arose from the same criminal episode. We reverse.

The trial court summarized the factual history relevant to this appeal.

> This case arose from a narcotics surveillance conducted by the Philadelphia Police Department ("PPD") on March 19, 2006, in the area of 4800 Westminster Avenue in Philadelphia. At approximately 6:15 p.m., Philadelphia Police Officer [George] Burgess observed a dark colored Buick, operated by [Appellant], parked on the 4800 block of Westminster [Avenue].[ ] A man [later] identified as Paul Lawson ("Lawson") approached [Appellant] and, after a brief conversation, [Appellant] handed money to Lawson. Lawson went into his pocket and handed small objects to [Appellant]. [Appellant] left the area, headed west on Westminster Avenue . . . . Sergeant [Michael] Ward of the PPD stopped [Appellant] at 800 North 50th Street and recovered two packets of crack cocaine ["from him." N.T. Suppression Hr'g, 3/20/13, at 6 ("Suppression (Narcortics)"). Appellant's] vehicle was driven to the police impoundment lot. On March 20, 2006, Sergeant Ward conducted an inventory search of the Buick and recovered one nine-millimeter Jennings, semi automatic firearm.[5]

Trial Ct. Op., 2/20/15, at 2-3 (citations omitted).

On March 19, 2006, a complaint for the narcotics charges was filed, and that case was docketed at MC-51-CR-0325201-2006. On March 20th, a

---

[3] 18 Pa.C.S. §§ 6106(a)(1), 6108.

[4] 35 P.S. § 780-113(a)(16), (19).

[5] The location of the firearm in the vehicle was not established in the record.

complaint for the VUFA charges was filed, and that case was docketed at MC-51-CR-0326911-2006. Appellant was released on bail and thereafter failed to appear for hearings on the matters. Bench warrants were issued, but Appellant was not taken into custody until October 2012.

The docket sheets indicate the Honorable Joseph C. Waters found Appellant in contempt on October 12, 2012, and sentenced him to five to ten days' imprisonment with immediate parole after five days. Docket, MC-51-MD-00027772-2012, 2/8/16, at 2. That same day, Judge Waters set bail on narcotics and VUFA charges, which Appellant posted on October 30th. Dockets, MC-51-CR-0325201-2006, 2/8/16, at 4 & MC-51-CR-0326911-2006, 2/8/16, at 4.

On March 5, 2013, the Philadelphia Municipal Court held the VUFA charges for trial. The following day, that matter was docketed in the Philadelphia Court of Common Pleas at CP-51-CR-0003029-2013, and the Commonwealth filed an information on March 15th.

Five days later, on March 20, 2013, Appellant's narcotics charges proceeded to a suppression hearing in the Philadelphia Municipal Court. Katie Perry, Esq., appeared on behalf of Appellant. N.T. Suppression (Narcotics) at 3. Appellant challenged whether the officers had probable cause to stop him and recover the cocaine. *Id.* at 3. Officer Burgess was the Commonwealth's sole witness at that hearing, and he described the suspected narcotics transaction between Appellant and Lawson. *Id.* at 7-8.

Appellant stipulated Sergeant Ward stopped him and discovered the cocaine. *Id.* at 17. The trial court denied Appellant's motion to suppress at the conclusion of the hearing, after which the parties agreed to a bench trial based on the suppression record. *Id.* at 23. The court found Appellant guilty of the narcotics charges and sentenced him to twelve months' probation. *Id.* at 24. Appellant took an appeal to the Philadelphia Court of Common Pleas, but the appeal was quashed on July 25, 2013, with a notation that it was withdrawn. Dockets, MC-51-0325201-2006 at 6 & CP-51-CR-0004429-2013, 2/8/16, at 4.

Meanwhile, the VUFA charges proceeded in the Court of Common Pleas. Following several continuances for Appellant to obtain private counsel, Appellant's present counsel, Raymond Driscoll, Esq., entered his appearance on December 10, 2013, and filed an omnibus pretrial motion that same day. Counsel requested additional continuances. On May 1, 2014, the Honorable Ann Buchert granted another continuance indicating the Commonwealth was ready for trial, but it "just passed PARS[6] report of previously requested related DC#." Docket, CP-51-CR-0003029-2013, 2/24/15, at 5.

On August 5, 2014, Appellant filed the underlying motion to dismiss the VUFA charges based on double jeopardy and 18 Pa.C.S. § 110. On

---

[6] "PARS" refers to the Preliminary Arraignment Reporting System, which contains arrest and investigation reports, as well as other preliminary and pretrial information.

August 7th, the trial court held a hearing on the motion. Appellant's counsel recited from the "75-49" investigation report for the narcotics charges, which included statements that Sergeant Ward recovered a firearm from the Buick. N.T. Mot. to Dismiss Hr'g, 8/7/14, at 5-6. Counsel asserted: (1) Appellant was convicted for the narcotics charges; (2) the Commonwealth was aware of the VUFA charges before the trial of the narcotics charges; and (3) all charges were within the same judicial district. *Id.* at 6-7. Counsel averred, "The only area where there's any argument . . . is whether [the charges] arise from the same criminal episode" and sought relief based on ***Commonwealth v. Walter Stewart***, 425 A.2d 346 (Pa. 1981). *Id.* at 9-10.

In response, Commonwealth's counsel argued that Appellant's purchase of the "narcotics was a completed transaction, a crime, before the gun was found." *Id.* at 15. Counsel also suggested the narcotics and VUFA charges were not "linked" based on Appellant's "very lengthy bench warrant history." *Id.* at 15-16. Counsel, however, did not address the first three factors mentioned by Appellant's counsel or dispute the framing of the legal issue before the trial court.

The trial court took the matter under advisement and on August 14, 2014, denied the motion to dismiss the VUFA charges, but found the motion

was not frivolous. Appellant timely filed a notice of interlocutory appeal[7] and a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant presents the following question for review:

> [W]as joinder of offenses required pursuant to 18 Pa.C.S. § 110 because [A]ppellant was already tried and convicted for charges arising out of the same criminal episode which was known to the Philadelphia District Attorney's Office and occurred within the same judicial district?

Appellant's Brief at 4.

The parties' arguments focus on the single issue developed before the trial court, namely, whether the narcotics and the VUFA charges arose "out of the same criminal episode." *See id.*; Commonwealth's Brief at 6. Appellant relies on *Walter Stewart* to argue that the narcotics and VUFA charges should have been joined. *Id.* at 13. He asserts that the narcotics and VUFA charges, as in *Walter Stewart*, arose out of the same criminal episode because "the same officer recovered both items and the Appellant is alleged to have possessed both on the same date, at the same time, and at the same location." Appellant's Brief at 12-13.

The Commonwealth responds that the narcotics and VUFA charges "were neither logically nor temporally related." Commonwealth's Brief at 6. Relying on *Commonwealth v. Edward Stewart*, 473 A.2d 161 (Pa. Super. 1984), it contends the narcotics and VUFA charges did not share sufficient logical connections, because they constituted different crimes and Appellant

---

[7] *See* n.2, *supra*.

actually possessed the narcotics, but constructively possessed the firearm. *Id.* at 13-14. As to the temporal aspects of the charges, the Commonwealth emphasizes the evidence that Appellant was in possession of the firearm before he purchased and possessed the narcotics. *Id.* at 14. Further, the Commonwealth notes Appellant was arrested for the narcotics charges on March 19, 2006, and the firearm was not discovered until the March 20th. *Id.* at 15. The Commonwealth thus claims *Walter Stewart* is distinguishable. *Id.* at 14-15.

The Commonwealth also contends the policies of "judicial efficiency and finality" militate against compulsory joinder. *Id.* at 6. According to the Commonwealth, Appellant "demonstrated contempt for, and in fact undermined, the jurisprudential interest in finality and efficiency" by absconding and remaining at large for more than six years. *Id.* at 17. He "voluntarily prolonged any hypothetical feelings of 'anxiety and insecurity' by his own misconduct." *Id.* Further, the Commonwealth did not intentionally engage in "government harassment," seek a strategic advantage by trying the offenses separately, or otherwise prejudice Appellant. *Id.* at 18-19.

A review of the record and the pertinent law compels the conclusion that *Walter Stewart* governs the instant case. For the reasons that follow, the Commonwealth's attempts to analyze the issue in this appeal under *Edward Stewart* and distinguish *Walter Stewart* are unconvincing.

Further, the Commonwealth's policy-based arguments lack merit. Thus, relief is due.

"Since the constitutional and statutory claims asserted here are both purely matters of law, our scope of review is plenary." ***Barber***, 940 A.2d at 376 (citation omitted). Our standard of review is *de novo*. ***Commonwealth v. Martin***, 97 A.3d 363, 364 (Pa. Super. 2014).

Section 110 of the Crimes Code sets forth the compulsory joinder rule, which provides, in relevant part:

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:
>
>         \*     \*     \*
>
> (ii) any offense based on the same conduct or **arising from the same criminal episode**, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense[.]

18 Pa.C.S. § 110(1)(ii) (emphasis added).

The Pennsylvania Supreme Court summarized the framework for analyzing the single episode requirement as follows:

- 8 -

In the seminal case of ***Commonwealth v. Hude***, 500 Pa. 482, 458 A.2d 177 (1983), we instructed courts considering the logical relationship prong to look at the "temporal" and "logical" relationship between the charges to determine whether they arose from a "single criminal episode." To this end, we noted:

> Generally, charges against a defendant are clearly related in time and require little analysis to determine that a single criminal episode exists. However, in defining what acts constitute a single criminal episode, not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered.

***Commonwealth v. Reid***, 77 A.3d 579, 582 (Pa. 2013) (citations omitted).

> [T]he determination of whether the logical relationship prong of the test is met turns on whether the offenses present a **substantial** duplication of issues of fact and law. Such a determination depends ultimately on how and what the Commonwealth must prove in the subsequent prosecution. There is a substantial duplication of issues of fact if "the Commonwealth's case rest[s] solely upon the credibility of [one witness]" in both prosecutions. There is no substantial duplication if "proof of each individual instance of [crimes committed] . . . require the introduction of the testimony of completely different police officers and expert witnesses as well as the establishment of separate chains of custody[,]" or if "there were three victims in three different counties requiring three different investigations, and different witnesses were necessary at each trial." When determining if there is a duplication of legal issues, a court should not limit its analysis to a mere comparison of the charges, but should also consider whether, despite "the variation in the form of the criminal charges," there is a "commonality" of legal issues within the two prosecutions. It should be remembered, however, "[t]he mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require an absolute identity of factual backgrounds." Finally, in considering the temporal and logical relationship between criminal acts, we are

> guided by the policy considerations § 110 was designed to serve, which "must not be interpreted to sanction 'volume discounting[,]' [procedural maneuvering,] or . . . to label an 'enterprise' an 'episode.'"

*Id.* at 585-86 (citations omitted).

"The 'same criminal episode' analysis cannot be made 'by merely cataloguing simple factual similarities or differences between the various offenses with which the defendant was charged' . . . ." *Id.* at 586 (citation and footnote omitted). Further, "[t]he interpretation of the term 'single criminal episode' must not be approached from a hypertechnical and rigid perspective which defeats the purposes for which it was created." *Hude*, 458 A.2d at 183 (citation omitted).

In *Walter Stewart*, the defendant "was stopped and frisked by two police officers on a public street in Lancaster[, who found] a pistol on [the defendant's] person and ten glassine packets containing what later proved to be heroin lying near him on the street . . . ." *Walter Stewart*, 425 A.2d at 347. The defendant pleaded guilty to carrying a firearm without a license and was sentenced for that offense. Thereafter, the Commonwealth proceeded on a possession of heroin charge, and he was convicted of that offense. *Id.* at 347-48.

After this Court affirmed the judgment of sentence, the Pennsylvania Supreme Court granted allowance of appeal in *Walter Stewart*. *Id.* at 348. The Court concluded "the two offenses with which appellant was charged were clearly part of the same 'episode': [the defendant]'s crimes consisted

of the possession of heroin and a gun at precisely the same time, 9:20 p.m. on April 25, 1974." *Id.* The *Walter Stewart* Court further rejected the Commonwealth's claim that the defendant's failure to seek consolidation of the charges waived his double jeopardy claim:

> In the interests of both defendants and society, [S]ection 110 of our Crimes Code requires joinder of all charges arising from the same conduct or criminal episode. Here, although the Commonwealth had "a clear responsibility to assist in furthering judicial administration and economy," and alone had the ability to act prior to [the defendant's] indictment on the second charge, it made no effort to avail itself of the courses of action provided by that section to protect these interests. [The defendant] had a right to be free from successive prosecutions which, in these circumstances, only the Commonwealth could protect. This it failed to do.

*Id.* at 350 (citation omitted).

Conversely, in *Edward Stewart*, the defendant was arrested and charged with receiving stolen property based on a theft of tools and supplies from an auto shop. *Edward Stewart*, 473 A.2d at 162. Police officers executed a search warrant on Appellant's vehicle and seized the tools and supplies. *Id.* Additionally, the officers found paraphernalia and suspected narcotics in luggage and containers inside the vehicle. *Id.* at 162-63. The officers obtained a second warrant and seized the narcotics and contraband the following day. *Id.* at 163. The defendant was charged and tried for receiving stolen property, but was acquitted of that charge. *Id.* Three and a half months later, the Commonwealth filed a narcotics charge against the defendant. The defendant filed a motion to dismiss the narcotics charge,

which the trial court denied, and the defendant took an appeal to this Court. *Id.*

The *Edward Stewart* Court, when affirming the trial court, distinguished *Walter Stewart*. *Id.* at 164. First, the Court determined there was "no logical relationship between the crimes of theft by receiving stolen property and possession of a controlled substance," because the charges were "defined by separate statutes and . . . intended to prevent different evils." *Id.* The Court emphasized, "A charge of theft by receiving stolen property, however, is not merely a crime of possession. It is a crime of theft and can be supported by evidence that it was committed in any manner constituting theft under the Crimes Code." *Id.*

Second, the *Edward Stewart* Court determined the temporal relationship between the offenses was "less than clear." *Id.* The Court explained, "The crime of theft by receiving stolen motor oil and mechanic's tools had its genesis in an unlawful taking which occurred during the early evening." *Id.* There was no indication in the record that theft and the possession of narcotics were committed contemporaneously. *Id.* The Court thus concluded that the receiving stolen property charge and the possession of narcotics "were not part of the same criminal episode and were not rendered part of the same episode merely because the evidence relevant to both [charges] were found during the same search." *Id.*

Instantly, the Appellant's narcotics and VUFA charges were closely related in time. Appellant was driving the Buick and purchased cocaine from Lawson while remaining inside the vehicle, and then drove away from the scene. *See* N.T. Suppression (Narcotics) at 7-8; N.T. Mot. to Dismiss Hr'g at 6; *accord Walter Stewart*, 425 A.2d at 348. The record established his possession of the firearm in the vehicle was concomitant with the purchase and possession of the cocaine. *Cf. Edward Stewart*, 473 A.2d at 164. All of the charges continued up to the moment of his arrest, when Sergeant Ward seized the narcotics, the vehicle, as well as the firearm inside the vehicle. *See Walter Stewart*, 425 A.2d at 348.

Moreover, the narcotics and VUFA charges required the testimony from two police officers, Officer Burgess and Sergeant Ward. Sergeant Ward's testimony was crucial in both cases to establish Appellant was in possession of cocaine and a firearm. Officer Burgess's testimony was essential to establish the necessary background that the discovery of all of the narcotics and the firearm was lawful. No testimony from additional witnesses or victims was necessary to establish the elements of any of the offenses. Accordingly, the factual duplication between the narcotics and VUFA charges was substantial.

As to the nature of the offenses, the narcotics and VUFA charges involved continuing possessory offenses.[8] *See Walter Stewart*, 425 A.2d at 348. Although the elements and policies underlying the narcotics and VUFA charges are different, a mere list of the elements and policies underlying the charges alone does not establish distinct "episodes." *See id.*; *Reid*, 77 A.3d at 585-86. Moreover, the technical differences between actual and constructive possession do not meaningfully distinguish *Walter Stewart*. *See Walter Stewart*, 425 A.2d at 347 (noting defendant actually possessed a firearm and narcotics were found on the ground near defendant).

Thus, the present case is nearly identical to *Walter Stewart*. Moreover, the *Edward Stewart* Court's focus on the nature of one of the offenses, *i.e.*, theft by receiving stolen property, as a property offense renders that case inapposite. *See Edward Stewart*, 473 A.2d at 164. That Appellant allegedly possessed the firearm before possessing the cocaine or that the firearm was not discovered until the following day did not create separate criminal episodes. Therefore, the narcotics and VUFA charges arose out of the same criminal episode and the trial court's conclusion to the contrary was legal error.

---

[8] Even if the purchase was an isolated event, Appellant's former conviction for possession was based on a continuing offense.

The Commonwealth further asserts the policies underlying 18 Pa.C.S. § 110 militate against application of the compulsory joinder rule. However, the Commonwealth does not allege Appellant engaged in the type of procedural maneuvering constituting waiver of a defendant's double jeopardy rights or otherwise diminished the Commonwealth's duty to address double jeopardy issues. *See Reid*, 77 A.3d at 585-86; *Walter Stewart*, 425 A.2d at 348; *see also Commonwealth v. Failor*, 770 A.2d 310, 315 (Pa. 2001).

Lastly, in light of the parties' arguments and the record developed in the trial court, there is no basis to conclude that Appellant failed to meet the remaining three prongs of 18 Pa.C.S. § 110, namely, that (1) the narcotics charges constituted a former prosecution that resulted in a conviction; (2) the VUFA charges were known to the Commonwealth at the time of the trial of the narcotics charges; and (3) all charges were within the same judicial district.[9] Accordingly, we reverse the order of the trial court denying Appellant's motion to dismiss the VUFA charges.

---

[9] There is some authority for the proposition that the Municipal Court exercised exclusive jurisdiction over the misdemeanor charges, including the violation of 18 Pa.C.S. § 6108. *See* 42 Pa.C.S. § 1123(a)(2), (b); Pa.R.Crim.P. 1001(A). In turn, the Court of Common Pleas exercised exclusive jurisdiction over the felony violation of 18 Pa.C.S. § 6105(a)(1). However, when felony and misdemeanor charges arise from the same criminal episode they should be tried together in the Court of Common Pleas. *See Commonwealth v. Belcher*, 335 A.2d 505, 508 n.5 (Pa. Super. 1975). *But see Commonwealth v. Beatty*, 455 A.2d 1194, 1198 (Pa. 1983) (holding former proceeding on summary offenses in magisterial

Order reversed. The charges in CP-51-CR-0003029-2013 are dismissed. Jurisdiction relinquished.


Jenkins, J. joins this Memorandum.

Mundy, J. files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2016

---

district court did not bar later prosecution in Court of Common Pleas for misdemeanor offenses); *Barber*, 940 A.2d at 379-80 (same).