J-S27014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JARED LEE MILLER, | |
| Appellee | No. 1696 MDA 2015 |

Appeal from the Order Entered September 3, 2015
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0002059-2014

BEFORE:  SHOGAN and DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 13, 2016**

The Commonwealth of Pennsylvania appeals from the September 3,
2015 order dismissing charges filed against Jared Lee Miller ("Appellee").
We reverse and remand for further proceedings.

The trial court provided the following factual history:

> On October 13, 2014, [at approximately 9:30 a.m.]
> Corporal Robert Ligon observed a vehicle driving erratically
> through Tower City and performed a traffic stop. [Appellee] was
> a passenger.  Corporal Ligon quickly discerned that the driver
> was under the influence of drugs and arrested her for driving
> under the influence.  While performing a custodial inventory
> search, 48 packets of heroin were discovered under [Appellee's]
> seat and 52 bags of heroin were found in the driver's purse.
> Other drug paraphernalia was also found in the purse.
> [Appellee] was arrested and charged with possession with the
> intent to deliver a controlled substance, possession of a

---

[*] Former Justice specially assigned to the Superior Court.

controlled substance, possession of drug paraphernalia, and public drunkenness under docket number CR-1880-2014. After his arrest, he was arraigned and then committed to Schuylkill County Prison. During intake at the prison [around 5:00 p.m.], [Appellee] was warned about bringing contraband inside, but he denied having any. A subsequent search by prison guards at intake produced a hypodermic needle containing heroin found inside his underwear. This led to the current contested charges under docket number CR-2059-2014.

Trial Court Opinion, 9/3/15, at 1–2. The charges at CR-1880-2014 were filed in Schuylkill County District Court 21-3-04. Appellee was charged at CR-2059-2014 with possession of a controlled substance by an inmate, possession of drug paraphernalia, and contraband other than a controlled substance.[1] Those charges were filed in Schuylkill County District Court 21-3-07.

Appellee was tried by jury at CR-1880-2014 on April 6, 2014, and found guilty of all charges except possession with intent to deliver a controlled substance. He began serving his sentence on October 13, 2014, and was paroled on June 15, 2015. Three weeks later, on July 7, 2015, Appellee filed a motion to dismiss the charges at CR-2059-2014, raising defenses of double jeopardy and joinder. Motion for Reduction of Bail and Dismissal of Charges, 7/7/15, at ¶¶ 13, 14. The trial court conducted a hearing on July 20, 2015, and accepted supplemental briefs. Thereafter, the trial court granted Appellee's motion to dismiss on September 3, 2015,

---

[1] 18 Pa.C.S. § 5123(a)(2), 35 P.S. § 780-113(a)(32), and 18 Pa.C.S. § 5123(c), respectively.

finding that the two incidents were part of a single criminal episode. Trial Court Opinion, 9/3/15, at 5.

This appeal followed. The Commonwealth presents a single question for our consideration: "Did the Trial Court err in determining that the facts in the instant matter constituted the 'same criminal episode' as those found in docket # 1880-2014 and subsequently granting [Appellee's] Motion for Dismissal." Commonwealth's Brief at 4.

The Commonwealth argues that trying Appellee at CR-2059-2014 does not violate the federal or state constitutional guarantee against double jeopardy[2] or Pennsylvania's compulsory joinder rule, 18 Pa.C.S. § 110. According to the Commonwealth, because "the two incidents occurred at different times, at difference places, following a clear break in criminal activity and involved different facts and witnesses they were not of the same criminal episode." Commonwealth's Brief at 7. We agree.

The double jeopardy guarantee requires a prosecutor to bring all known charges against a defendant arising from a "single criminal episode" in a single proceeding. ***Commonwealth v. Campana***, 304 A.2d 432, 441

---

[2] ***See*** U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); Pa. Const. art. I, § 10 ("No person shall, for the same offense, be twice put in jeopardy of life or limb"). "The double jeopardy protections afforded by the United States and Pennsylvania Constitutions are coextensive and prohibit successive prosecutions and multiple punishments for the same offense." ***Commonwealth v. States***, 891 A.2d 737, 741 (Pa. Super. 2005).

(Pa. 1973), *vacated and remanded*, 414 U.S. 808, (1973), *reinstated*, 314 A.2d 854 (Pa. 1974), *cert. denied*, 417 U.S. 969 (1974). "The compulsory joinder statute[3] is a legislative mandate that a subsequent prosecution for a violation of a provision of a statute that is different from a former prosecution, or is based on different facts, will be barred in certain circumstances." *Commonwealth v. Fithian*, 961 A.2d 66, 71 (Pa. 2008). As our Supreme Court has explained:

> The compulsory joinder rule bars a subsequent prosecution if each prong of the following test is met:
>
> (1) the former prosecution resulted in an acquittal or conviction; (2) the current prosecution was based on the same criminal conduct or arose from the same criminal episode; (3) the prosecutor in the subsequent trial was aware of the charges before the first trial; and (4) all charges [are] within the same judicial district as the former prosecution.

*Commonwealth v. Nolan*, 855 A.2d 834, 839 (Pa. 2004) (footnote and citations omitted); 18 Pa.C.S. § 110(1). "Each prong of this test must be met for compulsory joinder to apply." *Fithian*, 961 A.2d at 72. Our Supreme Court has further stated, "Pennsylvania's compulsory joinder rule . . . is designed to protect a defendant's double-jeopardy interests where the Commonwealth initially declines to prosecute him for the present offense, electing to proceed on different charges stemming from the same criminal

---

[3]   18 Pa.C.S. section 110 is a codification of the rule announced by our Supreme Court in **Campana**. **Commonwealth v. Gimbara**, 835 A.2d 371, 374 (Pa. Super. 2003).

episode." ***Commonwealth v. Laird***, 988 A.2d 618, 628 (Pa. 2010) (citations omitted).

Because the constitutional and statutory claims asserted herein are purely matters of law, our scope of review is plenary. ***Commonwealth v. Barber***, 940 A.2d 369, 376 (Pa. Super. 2007) (citation omitted). As with all questions of law, the appellate standard of review is *de novo*[.]" ***Commonwealth v. Vargas***, 947 A.2d 777, 780 (Pa. Super. 2008) (quoting ***Commonwealth v. Kositi***, 880 A.2d 648, 652 (Pa. Super. 2005)).

The case at hand involves the second prong of section 110, known as the logical relationship prong. We have addressed a logical relationship analysis as follows:

> In the seminal case of ***Commonwealth v. Hude***, 500 Pa. 482, 458 A.2d 177 (1983), we instructed courts considering the logical relationship prong to look at the "temporal" and "logical" relationship between the charges to determine whether they arose from a "single criminal episode." ***Id.***, at 181. To this end, we noted:
>
>> Generally, charges against a defendant are clearly related in time and require little analysis to determine that a single criminal episode exists. However, in defining what acts constitute a single criminal episode, not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered.
>
> ***Id.***
>
> With regard to the logical relationship, we noted:
>
>> In ascertaining whether a number of statutory offenses are "logically related" to one another, the court should initially inquire as to whether there is a

- 5 -

substantial duplication of factual, and/or legal issues presented by the offenses. If there is duplication, then the offenses are logically related and must be prosecuted at one trial. The mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require "an absolute identity of factual backgrounds."

*Id.* (quoting Paul Jerome Richey, Comment, *Commonwealth v. Campana* and Section 110 of the Crimes Code: Fraternal Twins, 35 U. Pitt. L.Rev. 275, 286–87 (1973)).

In **Commonwealth v. Bracalielly**, 540 Pa. 460, 658 A.2d 755 (1995), we interpreted **Hude's** guidance on the logical relationship determination as follows:

In determining if the "logical relationship" prong of the test has been met, we must ... be aware that a mere *de minimis* duplication of factual and legal issues is insufficient to establish a logical relationship between offenses. Rather, what is required is a substantial duplication of issues of law and fact. In **Hude**, we found that such substantial duplication had occurred. We did not, however, reach this conclusion by merely cataloguing simple factual similarities or differences between the various offenses with which the defendant was charged. Rather, we found that these offenses presented substantial duplication of issues of law and fact because the case did not involve "a situation where different evidence was required to be introduced to establish the alleged individual instances of possession and delivery", but rather, involved a situation in which the Commonwealth's case in both the first and second drug trials rested solely upon the credibility of a single witness. Thus, we concluded that the drug charges brought against the defendant were not only temporally related but also logically related, and thus constituted a single criminal episode.

*Id.*, at 761–62 (internal citations and footnote omitted).

*Commonwealth v. Reid*, 77 A.3d 579, 582–583 (Pa. 2013). "There is no substantial duplication, for example, if "proof of each individual instance of [crimes committed] . . . require[s] the introduction of the testimony of completely different police officers and expert witnesses as well as the establishment of separate chains of custody." *Id.* at 585 (quoting *Bracalielly*, 658 A.2d at 762).

Here, relying on *Commonwealth v. Edwards*, 399 A.2d 747, 748 (Pa. Super. 1979), the trial court conducted a logical relationship analysis and concluded that a single criminal episode existed:

> [Appellee] provided case law to support his position that the offenses were from a single criminal episode, but all were distinguishable from the present facts. However, *Commonwealth v. Edwards*, 264 Pa. Super. 223, 225, 399 A.2d 747, 748 (1979) is analogous to the facts presented here. In *Edwards*, a witness saw the defendant and three co-defendants take packages from a United Parcel Services truck and speed off in a car. The witness provided a license plate number to police and soon after an officer stopped the vehicle and discovered one of the packages inside. *Id.* The defendant was an occupant of the vehicle and repeatedly gave false identification. *Id.* at 225, 749. His true identity was not determined until he was fingerprinted. *Id.* The defendant was then separately charged with unsworn falsification to authorities and he pled guilty to this charge. *Id.* Several months later, he was tried by jury with his co-defendants on the theft charges which resulted in a mistrial. *Id.* When a new trial was scheduled, the defendant appealed, raising the double jeopardy issue. *Id.* The court found that in many situations, unlawful conduct committed at the time of arrest is part of the same episode as the original crime. *Id.* at 228, 750. The court cited the Model Penal Code, explaining,
>
> > in many instances one offense is a necessary step in the accomplishment of a given criminal objective; in

- 7 -

> other instances the commission of an additional offense may result from the attempt to secure the benefit of a previous offense or to conceal its commission. . . such offenses should be adjudicated in a single trial.
>
> **Id.** The court concluded that by hiding his identity, the defendant was attempting to avoid prosecution for the theft offenses. It is also noted that the attempts to mislead police occurred within thirty minutes of the alleged offenses and his actions were relevant evidence in his theft trial, reflecting a guilty state of mind. **Id.** The court concluded that the charges should have been consolidated. **Id.**
>
> Here, [Appellee] was charged with numerous drug offenses relating to heroin and was arrested and being processed for intake into the prison when more heroin in a syringe was found on his person. His separate offenses were all drug related and occurred within hours of each other. Since [Appellee] never left police custody, [Appellee] must have had the heroin on his person during the initial traffic stop but it went undiscovered by police. Like **Edwards**, [Appellee's] continued concealment of the syringe of heroin on his person was an attempt to conceal another offense and to avoid adding even more drug charges to his case. His possession of the heroin on his person could even have been used as evidence of intent for personal use, rather than to sell. There is a substantial duplication of law and fact. This Court concludes that [Appellee's] possession of the syringe was part of the same criminal episode as the charges for which he was originally prosecuted and should have been consolidated with those charges for trial.

Trial Court Opinion, 9/3/15, at 4–5.

We reiterate that "the determination of whether . . . the offenses present a substantial duplication of issues of fact and law . . . depends ultimately on how and what the Commonwealth must prove in the subsequent prosecution." **Reid**, 77 A.2d at 585. Here, different evidence was required to establish the offenses alleged in each case.

The first incident occurred at 9:30 a.m. and involved a traffic stop where Appellee was a passenger. The second incident occurred seven hours later at 5:00 p.m. and involved Appellee's intake at the Schuylkill County Prison. The first incident involved forty-eight bags of heroin stashed under Appellee's seat, and fifty-two bags of heroin and syringes in the driver's purse. The second incident involved a hypodermic needle containing heroin—not a syringe—found in Appellee's underwear.[4] The evidence supports a reasonable inference that Appellee possessed the hypodermic needle at the time of his arrest; however, its presence on his person did not give rise to criminal charges until its discovery at intake. *Cf. Commonwealth v. Stewart*, 425 A.2d 346, 348 (Pa. 1981) (holding single criminal episode existed where firearm and drugs were found on defendant "at precisely the same time"). Although Appellee remained in custody throughout the day, the Commonwealth's witness for the first incident was Corporal Ligon. The second incident involved completely different Commonwealth witnesses—the prison guards. *Accord Commonwealth v. Purnell*, 516 A.2d 1203, 1207 (Pa. Super. 1986) (rejecting compulsory joinder argument where defendant was arrested by an officer for disorderly conduct then charged with assaulting a different officer upon arrival at the

_____

[4] Affidavit of Probable Cause, 12/3/14. The police overlooking a single needle in Appellee's underwear upon searching him incident to arrest is a more plausible scenario than failing to detect a syringe on his person.

- 9 -

police station). Nothing in the record indicates that Appellee was asked if he had drugs or paraphernalia on his person at the time of arrest. However, at intake, Appellee was asked and denied having contraband. Although both incidents involved possession charges, the first incident also included a charge of public drunkenness, and the second incident involved charges specific to Appellee's status as an inmate.

In light of the foregoing, we conclude there was no substantial duplication of issues of fact or law. Thus, the two prosecutions did not arise from the same criminal episode. Furthermore, we agree with the Commonwealth that **Edwards** is distinguishable:

> In finding [that the two sets of charges were based upon conduct that constituted the same criminal episode], the [Edwards] Court noted that the false identification was "an effort to avoid prosecutions for the [theft] offenses, much as resisting arrest would be." [Edwards], at 750. Further, the giving of false identification "occurred within one-half hour of the alleged offenses, and while [the defendant] was still in the company of his accomplices making their 'getaway.'" Id. Lastly, the opinion noted that the "false statements were relevant evidence against him in his trial for the principal offenses". Id.
>
> None of the facts that this Honorable Court found pertinent in Edwards are true in this case. [Appellee] was not still in the company of his accomplice. He was not in the process of making a getaway from the initial charges. In taking contraband into the prison he was not trying to avoid prosecution for the initial charges. The taking of contraband into the prison did not happen within one-half hour of the initial charges, but seven and one-half hours. Finally, the taking of contraband into the prison was not relevant to prove that he initially possessed heroin with the intent to distribute it.

Commonwealth's Brief at 17. Here, neither Appellee's possession of a hypodermic needle in his underpants while being processed at the county prison nor his possession of controlled substances and syringes seven hours earlier while a passenger in a vehicle was relevant to proving the other offense. *Accord Commonwealth v. Walton*, 592 A.2d 335, 338 (Pa. Super. 1991) (holding that neither illegally possessing a firearm nor making a false report to police was necessary to prove the other offense and, therefore, the offenses did not occur as a part of the same criminal episode).

The trial court erred in ruling otherwise and in dismissing the charges against Appellee. Accordingly, we reverse.

Order reversed. Case remanded for trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2016

- 11 -