**[J-49-2023] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 110 MAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 445 MDA |
| | : | 2021 dated April 29, 2022 Affirming |
| v. | : | the Judgment of Sentence of the |
| | : | Huntingdon County Court of |
| | : | Common Pleas, Criminal Division, |
| MARCUS WOMACK, | : | at No. CP-31-CR-0000851-2018 |
| | : | entered November 12, 2020 |
| Appellant | : | |
| | : | ARGUED:  September 14, 2023 |

## CONCURRING OPINION

**JUSTICE DONOHUE**                    **DECIDED:  May 31, 2024**

I concur in the result.

This Court granted review to consider how Pennsylvania Rule of Criminal Procedure 600 applies to the two prosecutions of Appellant, Marcus Womack that were commenced with consecutive complaints alleging different charges.  More specifically, we granted review of the following question:

> Does Rule 600 run from the first or second criminal complaint when the first complaint is still pending against a defendant who is in pretrial detention and the second complaint is premised on grand jury proceedings that subsumed the case underlying the first complaint?

*Commonwealth v. Womack*, 288 A.3d 865 (Pa. Nov. 30, 2022) (per curiam).[1]  On one previous occasion, this Court addressed the application of the speedy trial rule in a scenario involving serial non-identical complaints.[2]  There we emphasized that the first question the reviewing court must address is the relationship between the two sets of charges.  We have more frequently addressed the application of Rule 600 where the Commonwealth filed and then refiled **identical** charges—often precipitated by its failure to meet its prima facie burden at the preliminary hearing—leading to the development of a test announced in *Commonwealth v. Meadius* to evaluate whether the Commonwealth is entitled to the filing date for the second complaint as the date to commence Rule 600

---

[1]  This Concurring Opinion addresses the issue as presented based upon the findings of fact and legal conclusions of the trial court.  The findings and conclusions regarding whether the conduct in the first complaint and the second complaint arose from the same criminal episode were never challenged on appeal.  *See* infra note 14 (explaining that Womack initially asserted that the charges arose from the same criminal episode, that the trial court made factual findings and determined the charges were not from the same criminal episode, and that Womack expressly abandoned his argument that the charges were based on a "same criminal episode" analysis in his Superior Court brief).  The Majority Opinion, in response to this Concurring Opinion, states that it believes that the charges in the two complaints arose from the same criminal episode.  Majority Op. at 1 (stating that this case addresses the application of Rule 600 where the Commonwealth files two complaints against a defendant "arising out of the same criminal episode"), 18-19 n.10 (stating that the charges "arose from the same underlying drug trafficking incident in a general sense" and that they arise "from the same conduct").  This conclusion is directly contrary to the unchallenged findings of the trial court in this case.  Trial Court Opinion, 4/21/2022, at 32-35.  Further, the Majority Opinion rejects the analytical framework discussed in this Concurring Opinion for determining whether the two complaints arise out of the same criminal episode.  Majority Op. at 18-19 n.10.  Although the Majority Opinion rejects our framework (and the trial court's), it offers no guidance as to how a trial court or the prosecutor should consider the facts underlying two sets of charges to determine whether or not the conduct arises from the same criminal episode such that it is subject to the *Meadius* test.  *Id*.

[2]  *Commonwealth v. Simms*, 500 A.2d 801, 802 (Pa. 1985).  At that time, the speedy trial rule was Rule 1100 and it prescribed 180 days for the prosecutor to bring a case from commencement to trial.  It was renumbered as Rule 600 in March of 2000.

calculations.[3]   In contrast, the question presented in this appeal asks from which filing date does the Rule 600 clock start to run where the first complaint and second complaint are not identical?   The Majority holds that the answer to this question also derives from the application of the *Meadius* test.   I disagree.

The rule announced in *Commonwealth v. Meadius* is irrelevant where, as here, the charges in the second complaint arise from a separate criminal episode than those in the first complaint.   While none of the three *Meadius* factors fit under the circumstances presented here, the Majority's application of a "due diligence" requirement on the Commonwealth **between** the filing of the first and second complaint is particularly inapt. Rule 600, the speedy trial rule, requires the Commonwealth to exercise due diligence in the prosecution of a criminal complaint, not in the investigation of unrelated charges that are later filed.   The Majority's approach is a quintessential example of forcing a square peg in a round hole.

In my view, faced with a Rule 600 challenge based on two non-identical complaints, it is only where the second set of charges is part of the same criminal episode as the first set of charges and where the evidentiary basis for those charges was available

---

[3]   The test to determine the Rule 600 run date in cases where identical charges have been filed was fully articulated in *Commonwealth v. Meadius*, 870 A.2d 802 (Pa. 2005), and it is now housed as a comment to Rule 600:

> [T]he Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when the withdrawal and re-filing of charges are necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the refiling is not an attempt to circumvent the time limitation of Rule 600.

Pa.R.Crim.P. 600, cmt. (citing *Meadius*, 870 A.2d at 802).

to the Commonwealth at the time the first complaint was filed that the *Meadius* test comes into play. Thus, while I concur in the result reached by the Majority, I disagree with its analytical framework.

The trial court[4] identified the charge-specific analytical framework for deciding this case and correctly did so without reliance of *Meadius*. The trial court considered the interplay and overlap of the charges in the first and second complaint to determine the appropriate start date for the Rule 600 clock for the charges in the second complaint. It did so by considering the intersection of the speedy trial timing requirements and compulsory joinder principles,[5] ultimately concluding, based on the charges, that Rule 600 runs from the filing date of the second complaint. Trial Court Opinion, 4/21/2021, at 34-35 (finding that "there are no compulsory joinder issues between the charges that were dismissed in the [first c]ase and the charges that resulted in convictions in the instant case, and thus the start date for Rule 600 purposes is October 31, 2018[]").

In this appeal, Marcus Womack faced two separate complaints—the first filed in October 2017 and the second filed in October 2018—arising out of his involvement in a large drug-trafficking operation. With both sets of charges pending, and when the first case had been languishing for over a year, Womack filed a pre-trial motion to dismiss

---

[4]  The trial judge was President Judge George N. Zanic, Court of Common Pleas of Huntingdon County. The Superior Court also endorsed the trial court's approach. *Commonwealth v. Womack*, 445 MDA 2021, 2022 WL 1284618 at *7-*8 (Pa. Super. Apr. 29, 2022) (non-precedential decision) (finding that the trial court's focus on what charges the Commonwealth could have brought when it filed the first complaint comports with Rule 600).

[5]  Trial Court Opinion, 4/21/2021, at 23 (citing U.S. CONST. AMEND. V, VI; Pa.R.Crim.P. 600; 18 Pa.C.S. § 110).

each of the cases pursuant to Rule 600.[6]  As to the first complaint, the trial court agreed with Womack that the Commonwealth failed to timely bring him to trial and dismissed the charges with prejudice.  *Id*. ¶¶ 33, 35.  As to the second complaint, i.e., the present case, Womack argued that the Rule 600 clock for the second set of charges should relate back to the filing date for the first complaint because all of the charges were part of one criminal transaction.[7]  *Id*. ¶ 32.  The trial court denied the motion, and Womack proceeded to a bench trial where he was convicted of drug offenses, corrupt organizations, and firearms offenses.[8]  *Id*. ¶¶ 32, 58, 69.  In a post-sentence motion, Womack asserted that the trial court erred in denying his Rule 600 motion.  The trial court issued its fifty-one-page opinion, accompanied by a chart, explaining his derivation of the relevant framework to analyze the non-identical two-complaint scenario and its application to the prosecutions of Womack.  Relying on *Commonwealth v. Earp*, 382 A.2d 1215 (Pa. 1978) (plurality), the

---

[6]  Pursuant to Pennsylvania Rule of Criminal Procedure 600, "Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed."  Pa.R.Crim.P. 600(A)(2)(a).

[7]  As the trial court would explain, given that all of the charges in the first complaint were dismissed pursuant to Rule 600, any of the charges in the second complaint placed on the same timeline would also be subject to dismissal under Rule 600.  Trial Court Opinion, 4/21/2021, at 21 (explaining that "if [Womack] is correct that either some or all of the charges between the instant case and the [first c]ase overlap, the overlapping charges must be dismissed[]").  Additionally relevant, after the trial court denied the Rule 600 motion related to the second set of charges, on March 29, 2019, the Office of the Attorney General ("OAG") filed an amended criminal information reducing the overall number of charges and modifying the dates of some of the offenses.  *Id*. ¶ 34.  The trial court's analysis pertains only to the charges in the amended criminal information.  *Id*. at 32 n.12 ("The evaluation would be very different for the original criminal information filed in the instant case, which included twenty-eight charges, many of which overlapped the [first c]ase.").

[8]  35 P.S. § 780-113(a)(30) (two counts); 18 Pa.C.S. §§ 903, 5111(a), 911(b)(3), 6105, 6106(a)(1), 7512.

trial court stated that the speedy trial period begins to run "on all charges arising out of a criminal transaction upon the initiation of criminal proceedings charging the defendant with any offense arising out of that transaction."  Trial Court Opinion, 4/21/2021, at 24 (citing *Earp*, 382 A.2d at 1217).

The facts of *Earp* clarify the rule it announced.  Leslie Earp was charged with murder, conspiracy, and several other offenses in connection with the shooting death of Robert Davis.  At the preliminary hearing, the murder and conspiracy charges were dismissed based on the Commonwealth's failure to establish a prima facie case.  Earp continued to be held on the other offenses arising out of the death of the victim.  The Commonwealth subsequently refiled the murder and conspiracy charges against Earp, and Earp sought dismissal of the charges under Rule 1100 because over 180 days had passed since the filing of the first complaint.  The trial court denied the motion, reasoning that the 180-day calculation commenced with the second complaint, not the first.  On appeal, a majority of this Court disagreed. Three Justices agreed with the plurality's reasoning, and a fourth Justice concurred in the result.

The plurality explained that the speedy trial rule contemplates commencement of the critical 180-day speedy trial period at the initiation of criminal proceedings.  *Earp*, 382 A.2d at 1217.  To define the initiation of criminal proceedings, it looked beyond the speedy trial rule, given that the rule's language did not answer the run date question.  The plurality observed that the compulsory joinder rules treat "all charges arising out of a criminal transaction … as a single case."  *Id*. (citing Pa.R.Crim.P. 131(b) (providing that "[w]hen more than one offense is alleged to have been committed by one person arising out of the same incident, the issuing authority shall accept only one complaint, and shall docket

the matter as a single case[]").  Reading the speedy trial rule and the joinder rule together, the plurality found that they "make clear that the 180[-]day speedy trial period set forth by Rule 1100 begins to run on all charges arising out of a criminal transaction upon the initiation of criminal proceedings charging the defendant with any offense arising out of that transaction."  *Id.*

The *Earp* plurality concluded that the mandatory speedy trial period commenced with the filing of the first complaint, reasoning that "these charges arose out of the same criminal transaction[.]"  *Id.* at 1218.  By charging those offenses, the Commonwealth initiated criminal proceedings against Earp, and thus was obligated to bring Earp to trial within 180 days.  *Id.* at 1218.  It stated: "So long as a portion of the proceedings arising out of the shooting of Robert Davis remained pending, the Commonwealth's obligation to bring these proceedings against appellant to trial within 180 days remained unaltered."  *Id.*  In further support of this reasoning, the plurality cited to American Bar Association ("ABA") proposed standards addressing speedy trial calculations in two-complaint scenarios, which provided that the speedy trial period commences

> from the date the charge is filed, except that if the defendant has been continuously held in custody or on bail or on recognizance until that date to answer **for the same crime or a crime based on the same conduct arising from the same criminal episode**, then the time for trial should commence running from the date he was held to answer.

*Id.* (citing ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial § 2.2(a) (Approved Draft, 1968) & Commentary) (emphasis added).  Because Earp was held in continuous custody on the other offenses for the entire period, the dismissal of the murder and conspiracy charge did not relieve the Commonwealth of

its obligation to bring the proceedings against Earp to trial for charges arising out of the same criminal transaction.

Drawing on the reasoning of *Earp*, the trial court explained that the subsequently charged offenses against Womack need not be the "precise same offenses as the initial complaint" for this rule to apply. Trial Court Opinion, 4/21/2021, at 25-26. Rather, it applies to "all charges arising out of a criminal transaction upon the initiation of criminal proceedings charging the defendant with any offense arising out of that transaction." *Id*.

The trial court also reviewed *Simms*. In *Simms*, faced with two non-identical criminal complaints and the question of when the clock starts running pursuant to Rule 1100, the Court determined that, on the facts of that case, the clock started with the filing of the second complaint. In reaching that conclusion, we acknowledged that "an abuse of the spirit of that Rule would occur if the Commonwealth were permitted to delay trials by simply, at will, withdrawing or dismissing complaints and filing new ones[.]" *Simms*, 500 A.2d at 803. Therefore, a body of case law had developed defining the limited circumstances under which the period for trial is deemed to run anew. *Id*. The circumstances where it ran from the first complaint involved "factual scenarios where complaints filed subsequent to the first complaint **repeated the charge of an offense** that had been set forth in the first complaint." *Id*. (emphasis added). In such circumstances, there was an "enhanced likelihood that the mechanism of repeatedly filing complaints" was being "utilized by the Commonwealth as a means of evading the [then] 180 day rule." *Id*.

We recognized that the rule had not been limited to identical offenses, echoing *Earp*'s language that the clock begins to run "on all charges arising out of a criminal

transaction upon the initiation of criminal proceedings charging the defendant with any offense arising out of that transaction[.]" *Id*. at 804 (citing *Earp*, 382 A.2d at 1217). The *Simms* Court then distinguished *Earp* on the grounds that *Earp* had been "narrowly interpreted by this Court and … limited in its application to the factual context presented in that case[.]"[9] *Id*.

Further, the *Simms* Court, relying on *Earp*'s mandatory joinder principles without so stating, highlighted that the offense was complete and chargeable at the time of the first complaint in *Earp*. *Simms*, 500 A.2d at 804. By contrast, at the time of the first complaint in *Simms*, the homicide charge could not have been filed. The Court concluded that the speediness of trial would be measured from the second complaint because events beyond the prosecution's control "change[d] the nature of the offense[.]" *Id*.

In my view, the trial court appropriately honed in on the logic of applying compulsory joinder principles to determine whether the Commonwealth gets the benefit

---

[9] *Earp*'s application was limited to circumstances where charges are filed against a defendant and some but not all of the charges are withdrawn or dismissed pre-second complaint, i.e., the scenario spelled out in the ABA proposed standard the *Earp* plurality relied upon. The cloud of the first set of charges hung over Earp from the filing of the first complaint and up until the time the second complaint was filed, but this was not so in the other cases. In the cases limiting *Earp*, the charges in the first complaint were dismissed prior to the filing of the second complaint. In *Commonwealth v. Genovese*, 425 A.2d 367 (Pa. 1981), the first set of charges was dismissed at the preliminary hearing before the second set of identical charges was refiled, and we explained that Earp's continuous confinement and incomplete dismissal of charges were the crucial factors in discharging him. *Genovese*, 425 A.2d at 369-70 & n.11; *see similarly Commonwealth v. Johnson*, 409 A.2d 308 (Pa. 1979) (distinguishing *Earp* on the basis that no charges survived the grand jury's first refusal to indict); *Commonwealth v. Horner*, 442 A.2d 682, 685 n.9 (Pa. 1982) (finding *Earp* factually inapposite because this case deals with the dismissal of an entire complaint prior to the filing of a new identical complaint). Based on those cases, *Earp* was limited to the factual scenarios where charges remained pending from the filing of the first complaint up until the filing of the second. These are the circumstances presented in this appeal.

of the date of the filing of a second set of non-identical charges when calculating the run date on those charges filed in the second complaint. The relevant specific principle was first identified in *Commonwealth v. Campana*, 304 A.2d 432 (Pa. 1973) ("*Campana I*") (plurality): successive prosecutions based on the same conduct or arising from the same criminal episode are barred. *Id*. at 439 (citing ALI MODEL PENAL CODE § 1.07(2)). We explained that "[b]y requiring that all causes of action arising from a set of operative facts be consolidated at one proceeding, the concept avoids repetitious litigation and assures finality without unduly burdening the judicial process."[10] *Id*. at 440. This concept is now embedded in Section 110(1)(ii) of the Crimes Code with the additional proviso that the charges arising from the same criminal episode were known to the prosecutor when the first prosecution was "brought to trial."[11]

---

[10] The *Campana* plurality cited the following definition of "episode:" "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series." *Campana I*, 304 A.2d at 429.

[11] According to that provision,

> § 110. When prosecution barred by former prosecution for different offense
>
> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:
>
> \*　　\*　　\*
>
> (ii) **any offense based on the same conduct or arising from the same criminal episode**, if such offense was known

(continued…)

Compulsory joinder rules and Rule 600 serve similar purposes. Rule 600 has dual

purposes: the protection of the defendant's speedy trial right and "the efficient

administration of justice." *Commonwealth v. Harth*, 252 A.3d 600, 615 (Pa. 2021) (citing

*Commonwealth v. Hamilton*, 297 A.2d 127, 133 (Pa. 1972) (referring to the Criminal

Procedural Rules Committee the issue of the promulgation of a speedy trial rule setting a

fixed time limit "in order to more effectively protect the right of criminal defendants to a

---

> to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense or the offense of which the defendant was formerly convicted or acquitted was a summary offense or a summary traffic offense[.]

18 Pa.C.S. § 110 (1)(ii) (emphasis added). The trial court cited this provision and the language providing that a subsequent prosecution is barred when the former prosecution "resulted in an acquittal or in a conviction as defined in section 109 … and the subsequent prosecution is for: … (ii) any offense based on the same conduct **or arising from the same criminal episode**, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution…[.]" Trial Court Opinion, 4/21/2021, at 27 (citing 18 Pa.C.S. § 110 (emphasis in Trial Court Opinion)).

In articulating its analysis of the charges in the first and second complaints in this case, the trial court referred to charges in the second complaint that were "independent of" the first set of charges. *Id*. at 32. I read this to capture the principle envisioned by *Campana I*, that the charges were not part of the same criminal episode because they arose from a different "set of operative facts." *Campana I*, 304 A.2d at 440. Though the trial court's test does not utilize these precise words, it is the logical reading of the trial court's analysis given its reliance on *Earp*, Section 110, compulsory joinder precedent, and its statements at the Rule 600 hearing.

Regarding *Campana I*, this Court subsequently filed a per curiam addendum opinion, on remand from the United States Supreme Court, characterizing the judgments in *Campana I* "as state law determinations pursuant to our supervisory powers." *Commonwealth v. Campana*, 314 A.2d 854, 856 (Pa. 1974) ("*Campana II*"). The Court stated that the result was in harmony with Section 110 of the Crimes Code which had become effective in 1973 to bar prosecutions for offenses based on the same conduct or arising from the same criminal episode. *Id*. (citing 18 Pa.C.S. § 110).

speedy trial and also to help eliminate the backlog in criminal cases in the courts of Pennsylvania")); *Commonwealth v. Dixon*, 907 A.2d 468, 473 (Pa. 2006) (referring to Rule 600 as "a careful matrix protecting a defendant's rights to be free from prolonged pretrial incarceration and to a speedy trial, while maintaining the Commonwealth's ability to seek confinement of dangerous individuals and those posing a risk of flight, and to bring its cases in an orderly fashion[]").  These purposes likewise drive compulsory joinder principles.  As the plurality recounted in *Campana I*, the same transaction test serves the defendant's rights and society's interest in efficient administration of justice.  *Campana I*, 304 A.2d at 440-41 (citing *Ashe v. Swenson*, 397 U.S. 436 (1970) (Brennan, J., concurring)).  The test "not only enforces the ancient prohibition against vexatious multiple prosecutions embodied in the Double Jeopardy Clause, but responds as well to the increasingly widespread recognition that the consolidation in one lawsuit of all issues arising out of a single transaction or occurrence best promotes justice, economy, and convenience." *Ashe*, 397 U.S. at 454 (Brennan, J., concurring); *see also Commonwealth v. Hude*, 458 A.2d 177, 180 (Pa. 1983) (stating that Section 110 serves two policy considerations: to protect the accused from the harassment of successive trials to offenses stemming from the same criminal episode and "as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation").  Given that they share common purposes (the efficient administration of justice for the accused and society), the supporting principles of compulsory joinder are appropriate for an analysis of a Rule 600 challenge where two non-identical complaints are at issue.

After drawing attention to the common law roots of compulsory joinder, the trial court looked at additional precedent to address Womack's dual prosecutions. The trial court described *Hude*, 458 A.2d at 177, which it viewed as involving a "situation similar to what [Womack] claims occurred here[,]" i.e., that the Commonwealth sought to try Womack piecemeal for a series of drug deliveries. Trial Court Opinion, 4/21/2021, at 29.

In *Hude*, the defendant was tried piecemeal for twenty counts of possession with intent to deliver and one count of corruption of minors regarding marijuana based on incidents between October 1974 to January 1975. The Commonwealth brought Hude to trial on some of the charges, resulting in a not guilty verdict. *Hude*, 458 A.2d at 178. Subsequently, the Commonwealth brought Hude to trial ("second" trial), where he was convicted of seven of the remaining charges. *Id.* at 178-79. On appeal, Hude was granted a new "second" trial, and he subsequently filed a motion to bar the prosecution pursuant to Section 110. Addressing his claim, this Court described how Section 110, adopted by the General Assembly shortly after *Campana I*, essentially achieved the same result as the common law rule adopted in *Campana I*. *Id.* at 180. We recounted the two policy interests served by Section 110: to protect the accused from governmental harassment by being forced to undergo successive trials for a single criminal episode and to assure finality of justice without unduly burdening the system with repetitious litigation. *Id.* Applying the common law rule as codified in Section 110, this Court explained that the critical question before it was whether it was improper to try the alleged transactions separately given that they are a "single criminal episode." *Id.*

To determine whether there was a "single criminal episode" capturing the offenses, the Court looked to the "temporal sequence of events" and also to "the logical relationship

between the acts[.]" *Id*. at 183. The Court characterized the single criminal episode test as follows:

> [W]here a number of charges are logically and/or temporally related and share common issues of law and fact, a single criminal episode exists, and separate trials would involve substantial duplication and waste of scarce judicial resources. In such cases, failure to consolidate will bar successive prosecutions.

*Id*. The *Hude* Court determined that the successive prosecutions of Hude violated compulsory joinder principles. *Id*.

Attempting to consider together *Earp*, *Simms*, common law concepts of the "same criminal episode" and *Hude*, the trial court reasoned that if the instant charges have evidentiary bases that are both: "(1) independent of those that supported the [first] [c]ase; and (2) were not available to the Commonwealth at the time the [first complaint] was filed …, the start date for Rule 600 purposes is the date the complaint was filed in the [second] case[.]" Trial Court Opinion, 4/21/2022, at 32.[12]

The trial court reviewed each of the charges, comparing the evidence and applying the test. *Id*., Exhibit A. It concluded that none of the charges in the second complaint were part of the same criminal episode as those brought in the first complaint because they had an evidentiary basis independent from the charges in the first complaint. It also determined that the Commonwealth could not have brought the charges in the first

---

[12]  After hearing argument regarding the Rule 600 motion, the trial court articulated the same two criteria. The trial court stated that it would look at the files to determine "whether these are the same matters[,]" i.e., whether they arise from the same criminal episode, and he was going to determine "what the Commonwealth knew and when did they know it." N.T., 3/7/2019, at 6.

complaint based on the information available to it.[13] *Id*. at 34-35. Therefore, for Rule 600 purposes, the start date for the charges in the second complaint was the date of filing the second complaint. *Id*.[14]

Based on the case law and principles from which the trial court's analysis was derived, after reaching the conclusion that the second set of charges were independent from the charges in the first complaint, the trial court's analysis of the charges for Rule 600 purposes should have ended. *Earp*, *Simms* and consideration of mandatory joinder requirements all make clear that charges based on an independent or separate criminal episode in a second complaint is the trigger for calculating the Rule 600 run date from the filing of the second complaint. By applying the second prong of its test (that the Commonwealth could not have brought these independent charges "based on the information available to it" when it filed the first complaint), the trial court conflated

---

[13] At the bench trial, the trial court reached a not guilty verdict on the one charge which it later determined was subject to compulsory joinder. Trial Court Opinion, 4/21/2021, at 32. Although that charge would have hypothetically been subject to the earlier start date, the issue was mooted by the trial court's not guilty verdict.

[14] Womack does not challenge the trial court's Rule 600 analysis of the computation of times following the filing of the second complaint. Trial Court Opinion, 4/21/2021, at 35-39. Significantly, Womack also has not challenged the trial court's charge-by-charge analysis of the evidentiary bases of the charges to determine whether they were part of the same criminal episode and whether the Commonwealth could have brought the charges when the first complaint was filed. He recognizes that the trial court's Rule 600 analysis involved determining what charges could have been brought in the first complaint. Womack's Brief at 25. Although the trial court applied the same analytical framework originally advocated by Womack, on appeal, he advances an entirely different analysis of the Rule 600 issue: "the Commonwealth does not get the benefit of a second complaint's filing date unless it exercised due diligence throughout the prosecution of the two complaints." *Id*. at 27. It appears that because the outcome of the analysis by the trial court did not inure to his benefit, on appeal to the Superior Court, Womack began advocating for application of the due diligence inquiry, stating that his previous position was not supported by the plain text of Rule 600. Womack's Superior Court Brief, at 48 n.13.

separate compulsory joinder considerations. *See* Trial Court Opinion 4/21/2021, at 32 (mistakenly suggesting that the test requires both criteria). Only when the charges in the second complaint **are part of** the same criminal episode charged in the first complaint is it necessary for an analysis of whether those charges were known to the Commonwealth at the time of the filing of the first complaint. If they were, the charges must be tried with the first set of charges and, in the Rule 600 context, the run date on those charges starts from the filing of the first complaint. Although the trial court did too much in its analysis of the charges, its conclusions, including that the charges in the second complaint were independent of the charges in the first complaint, are unchallenged.

The Majority Opinion[15] and Concurring Opinion[16] purport to rely on the trial court's reasoning. Yet, the Majority then disclaims the trial court's reasoning, and curiously adopts the *Meadius* test which it states applies in non-identical two-complaint scenarios to determine whether the Rule 600 period should start to run with the first or second complaint. Majority Op. at 15, 18.[17]

---

[15] Majority Op. at 16 & n.8 (stating that "our reliance on the trial court's analysis in this case rests not only on the fact that the trial court's opinion was indeed extremely thorough, but also on the standard of review being an abuse of discretion. As such, the trial court's determinations carry a degree of deference[]"). However, the Majority's response to this Concurring Opinion makes clear that it rejects the trial court's reasoning as well as its findings of fact. *Id*. at 1 (referring to both cases as arising out of the "same criminal episode"), 18-19 n.10 (stating that both cases "arose from the same underlying drug trafficking incident in a general sense" and arose "from the same conduct").

[16] Concurring Op. at 13. The Concurrence applauds the trial court opinion as so well-reasoned and documented that "in this exceptional instance" it agrees with relying heavily upon the trial court's "meticulous, exemplary efforts." Concurring Op. at 13; *see id*. at 13 (stating that joinder is subject to the understanding that the Majority relied upon the trial court's efforts).

[17] Although the Majority appears to determine that the second set of charges against Womack arose out of the same criminal episode as the first set of criminal charges, it (continued…)

The *Meadius* test is found in the commentary to Rule 600 regarding the refiling of complaints. According to the relevant Comment,

> in cases in which the Commonwealth files a criminal complaint, withdraws that complaint, and files a second complaint, the Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when the withdrawal and **re-filing** of charges are necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the **refiling** is not an attempt to circumvent the time limitation of Rule 600.

Pa.R.Crim.P. 600, cmt. (citing *Meadius*, 870 A.2d at 802) (emphasis added). The Majority concludes that it should apply the *Meadius* test here for no other reason than that "it seeks to reach a balance between the twin aims of Rule 600." *Id*. at 15. It does so without regard for the fact that this case does not involve the filing and refiling of identical charges and without explaining why any other test would be necessary once it is determined that the charges in the second complaint were independent of the charges in the first complaint. *Id*. at 16.

It seems obvious that in a non-identical complaint scenario, the *Meadius* test would only apply if the first and second set of charges were part of the same criminal transaction and if the evidence of the additional charges was available to the prosecution at the time it filed the first set of charges. Stated simply, if the Commonwealth did not need to or could not have brought the charges in the second complaint at the time of filing the first complaint, there is no conceivable basis to have the run date for the second complaint

---

does not explain the basis for this conclusion and does not expressly limit the application of the *Meadius* test to a scenario where the two sets of charges arise from the same criminal episode.

relate back to the filing of the first complaint. By contrast, where the Commonwealth brings a second set of charges that are identical to, or arising out of the same criminal transaction as the first and it knew of the charges at the time of the first filing, then the question of the Commonwealth's exercise of due diligence as articulated in *Meadius* and the comment to Rule 600, come into play.

Based on the Majority's approach, all two-complaint scenarios are reviewed under the *Meadius* test. A trial court must conduct an assessment of the irrelevant question of whether the subsequent filing of charges based on a separate criminal episode was necessitated by factors beyond the Commonwealth's control. Moreover, it must determine whether the Commonwealth diligently conducted its investigation into such unrelated charges filed in a subsequent non-identical complaint against a defendant.[18] Majority Op. at 15 (citing Pa.R.Crim.P. 600, cmt.). Rule 600 instructs courts to consider whether the Commonwealth brought the defendant to trial within 365 days of filing the complaint, Pa.R.Crim.P. 600 (A)(2), and in making that determination, courts include any periods of delay "caused by the Commonwealth when the Commonwealth has failed to exercise due diligence[,]" Pa.R.Crim.P. 600 (C)(1). Rule 600's due diligence inquiry is not focused on investigative efforts but instead on efforts in prosecuting the defendant after the filing of the complaint. *See Commonwealth v. Barbour*, 189 A.3d 944, 947 (Pa. 2018) ("By the terms of Rule 600, the Commonwealth must bring the defendant to trial

---

[18] Historically, claims of unlawful pre-arrest and pre-indictment delay are brought as Due Process violations or violations of the statute of limitations, not under Rule 600 which focuses on delay after the complaint is filed. *See, e.g.*, *Commonwealth v. Louden*, 803 A.2d 1181, 1184 (Pa. 2002) (stating that the primary protection against prosecution of "stale" crimes is the statutory period, and the secondary protection is in the requirements of due process).

within 365 days from the date upon which a written complaint is filed."); *Commonwealth v. Bryant*, 574 A.2d 590, 594-95 (Pa. 1990) (rejecting argument that the Rule 1100 clock started with initiation of pre-complaint disciplinary proceedings). The Majority's determination that the due diligence inquiry commences prior to the filing of the second complaint and focuses on the investigative efforts in this scenario threatens principles of separation of powers. *See* Majority Op. at 15-16 (inquiring into the Commonwealth's due diligence in investigating Womack prior to filing the second complaint).

Rule 600 provides a "concrete standard" to prevent "'undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.'" *Commonwealth v. Barbour*, 189 A.3d 944, 954 (Pa. 2018) (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)). Rule 600 is a recognition that once a complaint has been filed, looming charges and pretrial incarceration jeopardize employment, reputation, and stability. *Id*. at 954-55. Therefore, Rule 600(A)(2)(a) provides that "[t]rial shall commence … within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). As explicitly provided in the Rule, the protections of Rule 600 commence with the filing of "**the** complaint[.]" *Id*. (emphasis added). Thus, the Rule 600 clock begins to run with the filing of the relevant complaint, not with the commencement of separate unrelated proceedings in another case against the defendant and not with the conduct of an investigation before the second complaint is filed. Rule 600 is not a tool to question the Commonwealth's conduct of its pre-complaint investigations.

This Court granted review to consider how Pennsylvania Rule of Criminal Procedure 600 applies to a two-complaint scenario where the complaints are not identical. Rather than provide a clear framework to cabin such an analysis, the Majority adopts an unwieldy approach that subjects pre-complaint investigations to due diligence inquiries. I believe that before addressing and applying the *Meadius* test, a trial court faced with non-identical complaints must decide whether the second charges were part of the same criminal episode as charged in the first complaint. The trial court here made that assessment and concluded that the second set of charges was independent from the first, and no one has challenged that conclusion. Because the charges under review were independent from the first set of charges, the mandatory speedy trial period for the second complaint commenced on the date of the filing of the second set of charges. That should be the end of our analysis.

For the foregoing reasons, I only concur in the result reached by the Majority.